[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 02, 2002
THOMAS K. KAHN
CLERK

_____

No. 00-16547
_____

D.C. Docket No. 00-00065-CR-02-RWS


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TERRANCE RYAN,
a.k.a. Owen, etc.,
ROHAN ST. VON EVERING,

Defendants-Appellants.


_____


Appeals from the United States District Court
for the Northern District of Georgia

_____


**(May 2, 2002)**


Before BIRCH and DUBINA, Circuit Judges, and KATZ*, District Judge.

_____
        *Honorable Marvin Katz, U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation.

PER CURIAM:

On appeal, co-defendants Terrance Ryan ("Ryan") and Rohan St. Von Evering ("Evering") raise numerous issues pertaining to their jury trial and sentences on various charges. We address these issues *seriatim*.

## I.    <u>Terrance Ryan</u>

On August 15, 2000, Terrance Ryan was convicted by a jury of conspiracy to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. § 846, attempt to possess with the intent to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. § 846(b)(1)(B)(vii), and travel in interstate commerce with intent to promote an unlawful activity in violation of 18 U.S.C. §§ 1952(a)(3) and 2. All charges arose from Ryan's efforts to buy marijuana from a confidential informant and government agents. On December 11, 2000, Ryan was sentenced to concurrent terms of imprisonment of 70 months on each of the drug charges and 60 months on the interstate travel charge.

Ryan appeals the district court's refusal to instruct the jury on his claim of "sentencing entrapment," that is, his claim that the government entrapped him into agreeing to purchase a greater quantity of drugs than he was predisposed to purchase, and that he should not be held accountable for the larger quantity to which he was entrapped.

This court has previously rejected the notion that a sentencing court could impose a lesser sentence on the grounds that a defendant was entrapped into handling a larger quantity of drugs than he was predisposed to handle. *See United States v. Williams*, 954 F.2d 668, 672-73 (11th Cir. 1992). However, Ryan urges us to overrule our holding in *Williams* in light of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), which, as applied to this case, mandates that the quantity of drugs for which Ryan should be held responsible be found by a jury find beyond a reasonable doubt , rather than by a sentencing court using the  preponderance of the evidence standard.[1]  In response, the government argues that *Apprendi* does not impact the established law regarding entrapment, and also that under such law Ryan did not produce sufficient evidence to warrant an entrapment instruction.

---

[1]"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.  Ryan was convicted under, *inter alia*, 21 U.S.C. § 841(b)(1)(B)(vii), which punishes a drug offense involving 100 kilograms or more of marijuana with a mandatory minimum of five years of imprisonment and a maximum of 40 years of imprisonment.  21 U.S.C. § 841(b)(1)(C) punishes a drug offense involving 50 kilograms or more but less than 100 kilograms of marijuana with a maximum of 20 years of imprisonment.  *See also* 21 U.S.C. § 812 (marijuana is a Schedule I drug).  21 U.S.C. § 841(b)(1)(D) punishes a drug offense involving less than 50 kilograms of marijuana with a maximum of five years of imprisonment.  21 U.S.C. §§ 841(b)(4) and 844 impose a civil penalty for distributing a small amount of marijuana for no remuneration.

3

The impact of *Apprendi* on the availability of the sentencing entrapment defense has not yet been addressed in any published federal appellate opinion. We do not reach the question here because even if the defense were available, instructions on the defense were clearly not warranted on the evidence presented in this case.

Assuming that sentencing entrapment is a recognized defense to be raised before a jury in this circuit, we consider its viability in this case according to those rules applicable to a traditional entrapment defense. In this circuit, a successful entrapment defense consists of two elements: 1) government inducement of the crime, and 2) lack of predisposition on the part of the defendant. *United States v. Brown,* 43 F.3d 618, 623 (11th Cir. 1995). The right to present the defense is conditional, since

> [b]efore an entrapment defense may be presented to the jury, an evidentiary foundation for a valid entrapment defense must be present. In essence, this means that the trial court must determine whether a juror could entertain a reasonable doubt about whether the defendant was entrapped. This court, and its predecessor the Fifth Circuit, have articulated the standard as "some evidence must be shown, but more than a scintilla must be presented."

*United States v. Alston*, 895 F.2d 1362, 1367 (11th Cir. 1990) (citations omitted). Furthermore,

> [t]he determination of whether a sufficient evidentiary foundation exists in the record which could support a jury's acceptance of an entrapment defense "is properly a question for the trial judge, the standard of review being abuse of discretion."

*Id.* at 1368 (citations omitted).

In laying an evidentiary foundation for entrapment, the defendant bears the initial burden of production as to government inducement; once the defendant meets this burden, the burden shifts to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime. *See Brown*, 43 F.3d at 623. A defendant may meet his initial burden

> by producing any evidence sufficient to raise a jury issue that the government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it. This burden is light because a defendant is generally entitled to put a recognized defense to the jury where sufficient evidence exists for a reasonable jury to find in her favor. Nevertheless, evidence of the government's mere suggestion of a crime or initiation of contact is not enough. Instead, government inducement requires an element of persuasion or mild coercion. As the First Circuit has recently observed, inducement consists of opportunity plus something like excessive pressure or manipulation of a non-criminal motive.

*Id.* (citations, punctuation omitted). "Persuasion or mild coercion" may be shown if defendant "demonstrat[es] that he had not favorably received the government plan, and the government had to 'push it' on him, or that several attempts at setting

5

up an illicit deal had failed and on at least one occasion he had directly refused to participate." *Alston*, 895 F.2d at 1368 (citations omitted). The evidence must be viewed in the light most favorable to the defendant. *See United States v. Williams*, 725 F.2d 1402, 1404 (11th Cir. 1984).

If the defendant meets his initial burden, that is,

> [o]nce there is some evidence that the government induced the defendant to commit the crime, the question of entrapment becomes a factual one for the jury to decide. In that situation the defendant is entitled to have his defensive theory of the case put before the jury with appropriate instructions from the trial judge. It is elementary law that the defendant in a criminal case is entitled to have presented instructions relating to a theory of defense for which there is any foundation in the evidence.

*U. S. v. Timberlake*, 559 F.2d 1375, 1379 (5th Cir. 1977) (citations, punctuation, emphasis omitted).

Thus, assuming *arguendo* that the sentencing entrapment defense is potentially available at trial in light of *Apprendi*, we look to whether the district court in this case abused its discretion in finding that Ryan did not produce evidence "sufficient to raise a jury issue that the government's conduct created a substantial risk" that he would commit offenses involving more than 100 kilograms of marijuana. *See Alston,* 895 F.2d at 1367 (punctuation, citations omitted).

Ryan argues that at his initial meeting with the government informant, the

informant first offered to sell him 1000 pounds of marijuana at $1000 per pound, but Ryan countered that he was interested in taking only a small quantity and paying for it later. The confidential informant then cut the price in half and offered Ryan 500 pounds at $500 per pound. He also made a third offer, which Ryan accepted, of 500 pounds at $500 per pound as long as Ryan could make an initial payment of 25% or $62,500, with the remaining 75% to be later provided. When the exchange was to be completed, Ryan produced only less than $16,000, and yet the government agents agreed to give him at least 300 pounds for that amount.

In Ryan's view, these increasingly favorable offers by the government constituted "not merely inducement or suggestion on the part of the government, but an element of persuasion or mild coercion." *Id.* at 1368 (citation, punctuation omitted). He argues that the back-and-forth negotiations for smaller amounts of drugs at lower prices and less up-front cash demonstrates that he "had not favorably received the government plan, and the government had to 'push it' on him, or that several attempts at setting up an illicit deal had failed and on at least one occasion he had directly refused to participate." *Id.* (citations, punctuation omitted). Furthermore, Ryan argues that the abundance of marijuana at a low price and without prepayment in itself constitutes an "element of persuasion or mild coercion." *Id.*

7

However, it is clear that these negotiations did not involve any element of persuasion or coercion, but rather that the government's offers merely made the drugs more accessible or available to Ryan. The fact that a government agent simply supplies contraband or makes it available is not a proper basis for an entrapment defense. *See United States v. Russell*, 411 U.S. 423, 93 S. Ct. 1637, 36 L. Ed. 2d 366 (1973) (reversing finding of entrapment based solely on fact that government supplied a scarce ingredient essential for drug manufacturing, overruling *United States v. Bueno,* 447 F.2d 903 (5th Cir. 1971)); *see also Hampton v. United States*, 425 U.S. 484, 96 S. Ct. 1646, 48 L. Ed. 2d 113 (1976) (holding that governmental provision of contraband is not a violation of due process). *But cf.* U.S. S.G. § 2D1.1, cmt. n.15 (2000) (in context of sentencing, downward departure may be warranted where government as supplier sets artificially low price for drugs). In other words, while the government's offers may have constituted opportunity, what is wholly lacking is evidence of "opportunity *plus* something like excessive pressure." *Brown*, 43 F.3d at 623 (emphasis added).

Furthermore, even if Ryan's sentencing entrapment claim were soundly based in law and fact, the district court was not required to give the requested jury instruction "if it would not have assisted the jury in resolving the issues presented to it." *United States v. Chirinos,* 112 F.3d 1089, 1101 (11th Cir. 1997). In

determining whether the district court abused its discretion in refusing to give the requested jury instruction, this court considers three factors: "(1) whether the requested instruction is a substantially correct statement of the law; (2) whether the jury charge given addressed the requested instruction; and (3) whether the failure to give the requested instruction seriously impaired the defendant's ability to present an effective defense." *Id.* We find that the requested instruction was a substantially correct statement of the law of entrapment, and the government does not argue that the given jury charge addressed the requested instruction; however, we also find that the failure to give the instruction did not "seriously impair" the effective presentation of the defense. The district court permitted Ryan to argue vigorously to the jury that he did not have the intent or ability to purchase large quantities of marijuana and should not be held accountable for such large quantities; allowed him to cross-examine witnesses as to whether the offered drug price was below market; properly submitted the question of drug quantity to the jury; and instructed the jury that it may find Ryan guilty of any of several lesser-included offenses involving smaller amounts of marijuana, and provided it with special interrogatories permitting it to convict Ryan of such offenses. In light of the opportunities afforded the jury to consider Ryan's entrapment defense, we find that the failure to include specific instructions on the issue did not seriously impair

9

presentation of the defense. *See id.* at 1101 (holding that failure to instruct did not impair defendant's ability to argue that he did not intend to steal cocaine but money, where court permitted defendant to elicit supporting testimony and to make closing arguments on the issue).[2]

Thus, even assuming that the sentencing entrapment defense was hypothetically available, the district court was within its discretion to decide that Ryan did not present sufficient evidence of governmental inducement to require an instruction on sentencing entrapment. Furthermore, assuming that the instruction was warranted, the court's refusal to instruct did not impair the presentation of the defense.[3]

---

[2]Ryan specifically complains that he was deprived of the benefits of burden shifting under the entrapment defense. However, even this circuit's pattern jury instructions on entrapment do not explicitly discuss burden shifting, and we have repeatedly upheld these instructions against challenges premised on this omission. *See United States v. King,* 73 F.3d 1564, 1569-71 (11th Cir. 1996); *United States v. Davis*, 799 F.2d 1490, 1493-94 (11th Cir. 1986).

[3]Ryan also that he was entrapped into the drug deal in the first instance, that is, he appears to raise a traditional entrapment argument as well as a sentencing entrapment argument. The evidence presented in this regard consists of Ryan's girlfriend's testimony that Ryan told her that he had initially contacted the government informant about a knockoff designer clothing deal, but that the informant rejected such a deal as not lucrative and then raised the prospect of a drug deal. Assuming that this was the case, however, it would not be sufficient to raise a jury issue that government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it. *See Brown*, 43 F.3d at 623 ("[E]vidence of the government's mere suggestion of a

## II.    Rohan St. Von Evering

On January 31, 2001, Rohan St. Von Evering was sentenced to 120 months of imprisonment for conspiracy to possess and attempt to possess with intent to distribute 100 kilograms or more of marijuana, and simple possession of marijuana, in violation of 21 U.S.C. §§ 841(b)(1)(B)(vii), 844, and 846.  Evering raises claims of insufficient evidence, improper attribution of drug quantity at sentencing, and ineffective assistance of counsel.[4]

### 1.    Sufficiency of the Evidence

Evering appeals the district court's denial of his motion for acquittal, which argued that there was insufficient evidence on which to infer that he was a knowing participant in the conspiracy to distribute marijuana.  *See, e.g., United States v. Perez-Tosta,* 36 F.3d 1552, 1557 (11th Cir. 1994) (elements of conspiracy are that a conspiracy existed, that the defendant knew of it, and that defendant, with knowledge, voluntarily joined it).  We review the denial of a defendant's motion for acquittal *de novo,* and in considering the sufficiency of the evidence we draw all reasonable inferences in the government's favor.  *Id.* at 1556.  The question is

crime or initiation of contact is not enough.").

[4]Evering also adopts Ryan's arguments to the extent that those arguments are deemed relevant to the facts and circumstances of Evering's case.  We see no reason to address separately the issues raised by Ryan as they apply to Evering.

whether "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *Id.* at 1557.

Evering does not dispute that 1) Evering's name was on the money order used to pay the informant for expenses related to the drug deal; 2) Evering drove his co-defendant to two drug-related meetings; 3) Evering handed the bag containing the purchase money to the agent; and 4) Evering had substantial, albeit unrecorded, telephone contact with his co-defendant at times that coincided with critical points in the deal-making process, including just prior to the issuance of the money order and during the day that the transaction was to take place. However, he stresses that there is no direct evidence that he substantively knew of the drug deal, and argues that his conviction on circumstantial evidence alone was based not on "reasonable inferences" arising from the evidence, but was impermissibly based on "mere speculation." *Id.* For instance, he notes, an inference of knowing participation from a defendant's mere presence and association with conspirators alone is insufficient to convict. *See id.* However, it is also the law that any inference arising from such presence and association is a "material and probative factor that the jury may consider in reaching its verdict," *United States v. Lyons,* 53 F.3d 1198, 1201 (11th Cir. 1995)(citations omitted), and that an inference that the defendant had a "common purpose and plan" with the other conspirators may arise

12

from "a development and collocation of circumstances." *Id.* (citations omitted).

In addition to the evidence already mentioned, the jury also heard testimony that Evering's co-defendant gave Evering's phone number to the informant with whom he set up the drug deal; that Evering and his co-defendant discussed, in a tape-recorded conversation, a "delivery" and the other parties' need to "see the money"; that Evering remained within sight range of the actual transaction; and that after Evering showed the money to the agents, one of the agents explicitly referred to "seven bundles" in Evering's presence. Based on the totality of the evidence presented, a jury could have reasonably inferred that Evering was a knowing participant in the drug conspiracy. *See generally id.* at 1202 ("Evidence need not be inconsistent with every reasonable hypothesis except that of guilt in order to be sufficient," and jury is "free to choose among reasonable constructions of the evidence," regardless of whether the evidence is direct or circumstantial). In *Perez-Tosta*, we held that the evidence was insufficient to convict a defendant who simply delivered keys and registration papers related to a truck used in the drug deal, and who was found riding in a countersurveillance car near the scene of the deal. *Perez-Tosta*, 36 F.3d at 1559 (finding that "a reasonably jury could not ignore the doubts raised by the possibility that [defendant] was an unwitting dupe in his sole action that furthered the conspiracy"). In contrast, Evering's

13

involvement was supported by considerable evidence more directly reflective of substantive knowledge; in particular, there was evidence that his number was given to the informant as a contact and that he drove his co-defendant to two separate drug-related meetings. *See Lyons,* 53 F.3d at 1203 (rejecting claim that defendant was merely present at drug deals and not an active participant, since "[defendant] may have been merely present once; but twice, under all the circumstances of the case, strains our credulity, as it did the jury's"). Thus, we cannot disturb the jury's finding that Evering was a knowing participant in the offense.

2. **Drug Quantity and Minor Role Reduction**

Evering also argues that the district court erred in attributing 227.014 kilograms of marijuana to him because there was no evidence to demonstrate that Evering was a party to any of the negotiations for the purchase of marijuana. We review a district court's determination of the quantity of drugs properly attributable to a defendant for clear error. *United Sates v. Zapata*, 139 F.3d 1355, 1357 (11th Cir. 1998). U.S.S.G. § 1B1.3(a)(1)(A) provides that, to determine the base level of the charged offense, the district court must consider as relevant all acts and omissions committed, aided and abetted, counseled, commanded, induced, procured, or willfully caused by the defendant. In the case of a conspiracy, the district court must consider all acts by other participants that were both reasonably

14

foreseeable and in furtherance of the conspiracy.  *See* U.S.S.G.

§ 1B1.3(a)(1)(B); *see also id.*, cmt. n.2; *United States v. Matthews*, 168 F.3d 1234,

1247 (11th Cir. 1999).  "Even if the court does not make individualized findings

regarding the scope of the defendant's criminal activity and the contraband

quantities reasonably foreseeable at his level of participation, the sentence can be

upheld if the record supports the district court's determination of the drug quantity,

including imputing others' unlawful acts to the defendant."  *United States v.*

*Mertilus*, 111 F.3d 870, 873 (11th Cir. 1997).

As previously discussed, the evidence reasonably supported an inference

beyond a reasonable doubt that Evering was a knowing participant in the drug

conspiracy from the time when his co-defendant gave Evering's phone number to

the informant until his arrest at the scene of the planned exchange.  Evering was

convicted of conspiracy to possess more than 100 kilograms of marijuana, which

was appropriate as the object of the conspiracy was 500 pounds or 226.8 kilograms

of marijuana.  Evering was also convicted of simple possession of 213.8 grams of

marijuana, independent of 500 pounds of drugs that were the object of the

conspiracy.  The total amount of drugs involved was thus 227.014 kilograms of

marijuana, and the district court did not err when it attributed that amount to

Evering at sentencing.  *See* U.S.S.G. § 2D1.1, cmt. n.12 ("[I]n a reverse sting, the

15

agreed-upon quantity of the controlled substance would more accurately reflect the scale of the offense because the amount actually delivered is controlled by the government, not by the defendant."); *id.* ("If the offense involved both a substantive drug offense and an attempt or conspiracy . . . the total quantity involved shall be aggregated to determine the scale of the offense.").

Evering also argues that the district court erred in failing to award him a minor-role reduction pursuant to U.S.S.G. § 3B1.2(b). A district court's finding regarding a defendant's role in the offense is reviewed for clear error. *United States v. De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). The defendant has the burden of establishing his role by a preponderance of evidence. *Id.* at 939. A defendant warrants a two-level reduction for playing a minor role in an offense if he is less culpable than most other participants, although his role could not be described as minimal. U.S.S.G. § 3B1.2, cmt. n.1. The district court's determination concerning a role adjustment is premised on a case-by-case factual inquiry. *Id.*, cmt. background.

The district court conducts a two-pronged analysis of the defendant's conduct to determine whether the defendant warrants a minor-role adjustment. First, the district court must assess whether a defendant's particular role was minor in relation to the relevant conduct attributed to him in calculating his base offense

16

level. *De Varon*, 175 F.3d at 941. "Only if the defendant can establish that she played a relatively minor role in the conduct for which she has already been held accountable – not a minor role in any larger criminal conspiracy –" may a downward adjustment be applied. *Id.* at 944. The second prong of the analysis, if reached, requires the district court to assess a defendant's relative culpability vis-a-vis that of any other participants. *Id.*

In this case, the relevant conduct used to calculate Evering's base offense level included the agreement by his co-defendant to buy 500 kilograms of marijuana. We have already considered the evidence supporting a finding beyond a reasonable doubt that Evering knowingly joined in that agreement from at least the time when his co-defendant supplied Evering's phone number to the government informant until Evering's arrest at the scene of the drug deal. The same evidence supports the district court's finding that Evering failed to establish by a preponderance of the evidence that his role, as compared to the relevant conduct, was minor. Thus, the sentencing court did not commit clear error in failing to award a minor role adjustment under section 3B1.3.

3.    **Ineffective Assistance of Counsel**

Evering claims ineffective assistance of counsel on the grounds that trial counsel knew of a potentially exculpatory letter written by Evering's co-defendant,

17

yet failed to investigate the matter and consequently did not move for severance or bring the evidence to the jury's attention. Under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), in order to establish ineffective assistance claim defendant must show deficiency of counsel's performance and a reasonable probability of prejudice.

There is no dispute that Evering did not raise this claim before the district court. "[A]s a general rule claims of inadequate representation which have not been raised before the district court cannot be raised on direct appeal." *United States v. Phillips,* 664 F.2d 971, 1040 (5th Cir. Unit B Dec. 1981) (citations omitted), *abrogated on other grounds as recognized in United States v. Acevedo,* 141 F.3d 1421, 1425 n.7 (11th Cir. 1998). However, "where the record is sufficiently developed with respect to such a claim, this Court may determine the merits of the claim." *Id.* (citations omitted). In *Phillips,* for example, this court entertained an *Strickland* claim where the defendant's complaints about his trial counsel were raised at the sentencing hearing, counsel responded to the allegations point by point, and the trial court clearly stated its findings of a conflict of interest and appointed substitute counsel. *Id.*

In this case, the record contains some information as to the allegedly exculpatory letter and Evering's prior counsel's actions in regard to that letter. The

district court held a conference on the motion to sever, at which the letter and Evering's counsel's failure to move for severance at an earlier time were discussed. The issue of the letter arose again after trial, when Evering's trial counsel moved for a new trial on the grounds that the letter constituted new evidence. The district court held a hearing on the motion and issued a written order denying the motion.

This record, although partially developed on the issue of the letter, is insufficiently developed to consider the merits of the ineffective assistance claim. There is no record as to the critical issue of the scope of defense counsel's investigation into the letter. Furthermore, as the district court found when analyzing whether the letter warranted a new trial under *United States v. Hall*, 854 F.2d 1269, 1271 (11th Cir. 1988), 1) there was no evidence as to whether the letter was discovered before trial; 2) there was no evidence as to whether counsel exercised due diligence in trying to discover the evidence; and 3) there was insufficient evidence upon which to base a conclusion that the new evidence would likely produce a different result in a new trial. Just as the district court found the record to be insufficiently developed as to the discovery of the letter and its significance to the trial, as well as on counsel's conduct with regard to the letter, the record is insufficiently developed to make a finding on these same issues under *Strickland*. Thus, the issue cannot be raised in this direct appeal.

The judgment of the district court is AFFIRMED.