[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 11, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-12697
Non-Argument Calendar

_____

D. C. Docket No. 02-20599-CR-CMA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SOPHIA JEAN-BAPTISTE,
MARIE JEAN-BAPTISTE,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(August 11, 2006)**

Before TJOFLAT, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Co-defendants Marie and Sophia Jean-Baptiste were charged with: (1)

conspiracy to possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. § 846 (Count 1); (2) attempt to possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 846 (Count 2); (3) conspiracy to use a facility of interstate commerce with the intent that murder be committed, in violation of 18 U.S.C. § 1958 (Count 3); (4) conspiracy to use a firearm in a crime of violence and a drug trafficking crime, in violation of 18 U.S.C. §§ 1951(a), 1958 and 21 U.S.C. § 846 (Count 4); and (5) conspiracy to commit robbery, in violation of 18 U.S.C. § 1951(a), (b)(1),(3) (Count 5). Marie appeals convictions on all five counts. Sophia appeals convictions on Counts 1 and 5.

I. *Defendants' Entrapment Defense*

Both defendants argue that the district court erroneously denied them judgments of acquittal, claiming that the government insufficiently rebutted their affirmative defense of entrapment. We review this preserved claim de novo, "viewing the evidence in the light most favorable to the government, and drawing all reasonable inferences and credibility choices in favor of the jury's verdict." United States v. Rodriguez, 218 F.3d 1243, 1244 (11th Cir. 2000).

Once the Jean-Baptistes produced some evidence of inducement, it was for the government to prove, beyond a reasonable doubt, that they were predisposed to

2

commit the offense.  United States v. Ryan, 289 F.3d 1339, 1343 (11th Cir. 2002).

Predisposition is a "fact-intensive" and subjective inquiry, and a jury's credibility

assessments are critically important to gauging "the defendant's readiness and

willingness to engage in the charged crime absent any contact with the

government's . . . agents."  United States v. Brown, 43 F.3d 618, 624-25 (11th Cir.

1995).  Predisposition may be demonstrated by "the defendant's ready commission

of the charged crime [or] evidence that the defendant was given opportunities to

back out of illegal transactions but failed to do so."  Id. at 625.

The evidence was clearly sufficient under these standards to convince a

reasonable jury that the Jean-Baptistes were predisposed to commit the planned

crimes prior to contact with the government's confidential informant (CI). The

evidence showed that Marie gave the CI instructions on the best way to murder

their victim and gain access to hidden drugs, including specific direction on how to

"persuade" a different victim to reveal the drugs' location.  There was also

evidence that Sophia herself initiated contact with the CI and expressed

independent concern that a drug theft accompany the murder.  On the basis of these

facts, the jury was entitled to find predisposition beyond a reasonable doubt.

II.  *Outrageous Conduct by Government against Sophia Jean-Baptiste*

Citing her onetime romantic relationship with the CI, Sophia argues that the

government's conduct in securing her conviction was outrageous as to violate due process under United States v. Russell, 411 U.S. 423, 431-32, 93 S.Ct. 1637, 1642-43, 36 L.Ed.2d 366 (1973). We disagree. Looking to the totality of the circumstances, we do not find that the government's use of the CI in this case shocks the "universal sense of justice," as required by our caselaw. United States v. Edenfield, 995 F.2d 197, 200-01. The many recorded conversations between the CI and the Jean-Baptistes provided substantial evidence that Sophia was a willing participant in the planned crimes, quite apart from her prior intimate involvement with the CI.

III. *Sufficiency of the Evidence for Sophia Jean-Baptiste's Conspiracy Conviction*

Sophia claims that there was insufficient evidence to conclude that she knowingly and voluntarily joined the conspiracies.[1] She argues that the government failed to prove her knowledge of the essential nature of the conspiracy, including the specific purpose of the alleged robbery. On the basis of Apprendi v.

---

[1] To sustain a conviction under § 1951(a) & (b)(1), the government must prove that: (1) two or more persons agreed to commit a robbery or extortion encompassed by the statute; (2) the defendant knew of the conspiratorial goal; and (3) the defendant voluntarily participated in helping to accomplish the goal. United States v. Diaz, 248 F.3d 1065, 1084 (11th Cir. 2001). To sustain a conviction on the § 846 conspiracy count, the government must prove that: (1) there was an illegal agreement to possess with the intent to distribute cocaine; (2) Sophia knew about it; and 3) she knowingly and voluntarily joined the agreement. United States v. Charles, 313 F.3d 1278, 1284 (11th Cir. 2002).

4

New Jersey, 530 U.S. 466 (2000), she further argues that the government was obligated but failed to show that she had specific knowledge of the five kilograms of cocaine to be stolen. These arguments fail for at least two reasons. First, the same evidence which refutes Sophia's entrapment defense adequately demonstrates her willing and knowing participation in the charged conspiracies. Second, Sophia's Apprendi argument is clearly foreclosed by the well settled rule that "in the context of federal drug cases, drug type and quantity do not have to be charged in the indictment or submitted to the jury for proof beyond a reasonable doubt," except where a defendant's sentence would exceed the prescribed statutory maximum. United States v. Tinoco, 304 F.3d 1088, 1100 (11th Cir. 2002).

IV. *Federal Jurisdiction over § 1958 Charge*

Marie Jean-Baptiste appeals her conviction for conspiracy to use a facility of interstate commerce – here, interstate telephone lines – with the intent to commit murder. She urges this Court to hold that purely intrastate use of an interstate facility does not support federal jurisdiction under § 1958(a), which states:

> Whoever . . . uses . . . any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so shall be fined under this title or imprisoned for not more than ten years, or both.

This provision was recently amended to address the courts' difficulty in

interpreting it, with Congress changing the phrase "any facility *in* interstate or foreign commerce" to "any facility *of* interstate or foreign commerce." See United States v. Drury, 396 F.3d 1303, 1311 (11th Cir.), cert. denied, 126 S. Ct. 336 (2005); Intelligence Reform and Terrorism Prevention Act of 2004, § 6704, Pub.L. No. 108-458, 118 Stat. 3638. In Drury, we held that this alteration makes "absolutely clear that § 1958 establishes federal jurisdiction whenever any 'facility of interstate commerce' is used in the commission of a murder-for-hire offense, regardless of whether the use is interstate in nature (i.e. the telephone call was between states) or purely intrastate in nature (i.e. the telephone call was made to another telephone within the same state)." Evidently, our holding in Drury directly precludes Marie's jurisdictional challenge to her § 1958 conviction.

V. *Marie Jean-Baptiste's Claim of Mistrial*

At trial, Dr. Rey, a government witness on voodoo, stated that Marie's voodoo defense was "very stretched." On Marie's objection, the district court instructed the jury to disregard all of Dr. Rey's testimony, and later narrowed the exclusion to encompass only the offending statement. On appeal, Marie argues that Dr. Rey's non-expert assessment of her argument effectively tarred her defense as "bogus" and that the district court therefore should have granted her motion for a mistrial.

6

Reviewing for an abuse of discretion, <u>United States v. Garcia</u>, 405 F.3d 1260, 1272 (11th Cir. 2005), we conclude that the court properly refused Marie's request for a mistrial. In <u>United States v. Warren</u>, 772 F.2d 827, 839 (11th Cir.1985) (internal quotation and citation omitted), we held that improper evidence may be cured by a corrective instruction unless "the evidence is so highly prejudicial as to be incurable by the trial court's admonition." <u>Id.</u> The district court did not abuse its discretion in finding that Dr. Rey's statement did not rise to this exceptional level. Moreover, the fact that the court modified the scope of its evidentiary exclusion, striking only a portion of Dr. Rey's testimony rather than all of it, hardly minimizes the ultimate curative effect of its instruction. If any "confusion" actually arose from the court's revision, we do not see why the government, rather than Marie herself, would have benefitted from it.

**AFFIRMED.**