[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11333
Non-Argument Calendar
_____

D.C. Docket No. 9:13-cr-80151-DTKH-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STEPHEN ANTHONY PAULSEN,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 26, 2015)

Before TJOFLAT, WILSON, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Stephen Paulsen ("Defendant") appeals his conviction for using a means of interstate commerce to attempt to persuade, induce, entice, and coerce a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). Defendant argues that the district court, when instructing the jury, erroneously defined "sexual activity." He further argues that this erroneous definition served to constructively amend his indictment. He finally argues that the district court erred when it refused to instruct the jury on his entrapment defense. Defendant contends that the above errors require reversal of his conviction. After careful review, we affirm Defendant's conviction.

## I. Background

In July 2013, a detective with the Boynton Beach Police Department's Special Victims Unit set up a profile for a fictitious teenager on Grindr, a social media application for smart phones and iPads. In this profile, the teenager indicated that his name was "Paul" and that he was young.

Shortly thereafter, Defendant initiated a conversation with "Paul" by messaging him through Grindr. That same day, Defendant inquired how old "Paul" was, and the latter indicated that he was 15. Over the next five-day period, July 12 through 16, Defendant and "Paul" communicated via messages on the Grindr site and engaged in sexually explicit conversations, including discussing oral sex, grooming habits, and the size of their genitalia. Defendant sent "Paul"

2

hand-drawn images of men engaged in sexual acts.  Defendant expressed his interest in having oral sex with "Paul" and instructed "Paul" on having phone sex. Ultimately, on July 16, Defendant and "Paul" arranged to meet, and when Defendant showed up at "Paul's" apartment, he was arrested.

Defendant was indicted for using a means of interstate commerce to attempt to persuade, induce, entice, or coerce a minor to engage in sexual activity.  He pled not guilty and proceeded to a jury trial.  At trial, two detectives testified on the government's behalf.  Defendant did not present any witnesses nor did he testify.

Defendant raised two objections to the district court's jury instructions. First, he objected to the jury instruction that defined "sexual activity" as including "the intentional touching in a lewd and lascivious manner of the genitals, the genital area, or buttocks, or clothing covering those areas of a person" under 16.[1] Second, he objected to the district court's refusal to instruct the jury on his entrapment defense.  The district court overruled both objections.  The jury found Defendant guilty.

## II. Discussion

A.    Jury Instruction Defining "Sexual Activity"

Defendant argues on appeal that the district court erred when it instructed the jury that the definition of "sexual activity" included lewd and lascivious

---

[1] The district court arrived at this definition of "sexual activity" by incorporating the definition of lewd and lascivious molestation found in Florida Statute § 800.04(5).

touching over clothing.[2]  He contends that this definition of "sexual activity" was broader than the applicable definition of "sexual act" found in 18 U.S.C. § 2246(2), which expressly excludes touching through clothing.

We review *de novo* the question of whether a jury instruction misstated the law or misled the jury to the prejudice of the objecting party. *United States v. House*, 684 F.3d 1173, 1196 (11th Cir. 2012).  Nevertheless, even if erroneous, a jury instruction is subject to harmless error review.  *Id.*  "An error is harmless if the reviewing court is satisfied beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."  *Id.* at 1197 (internal quotation marks omitted).

As noted, Defendant was charged with attempting to violate 18 U.S.C. § 2422(b).  A person violates this statute when, by using a means of interstate

---

[2] The district court's complete instruction concerning the definition of "sexual activity" is as follows.

> The term sexual activity, as used in these instructions, means the oral or anal penetration by, or union with, the sexual organ of another, or anal penetration of another by another object.   So the first definition is the oral or anal penetration by, or union with, the sexual organ of another, or anal penetration of another by another object.

> In addition to that, the term sexual activity includes the intentional touching in a lewd and lascivious manner of the genitals, the genital area, or buttocks, or clothing covering those areas of a person less than 16 years of age, or enticing a person under the age of 16 to so touch the perpetrator.

> The words lewd and lascivious mean the same thing and they mean a wicked, lustful, unchaste, licentious, or sensual intent on the part of the person doing the act.

4

commerce, he "knowingly persuades, induces, entices, or coerces any individual" under the age of 18 "to engage in . . . any sexual activity for which any person can be charged with a criminal offense, or attempts to do so." 18 U.S.C. § 2422(b). This statute, which is found in Chapter 117 of Title 18 of the United States Code, does not define "sexual activity."

In another chapter of Title 18 of the Code, Chapter 109A, the latter defines "sexual act" to mean:

> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however, slight;
>
> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
>
> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
>
> (D) the intentional touching, *not through the clothing*, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

*Id.* § 2246(2) (emphasis added). In short, the federal statute under which Defendant was convicted (§ 2422(b)) does not define the "sexual activity" that is prohibited by that statute other than to say that it includes any attempted sexual activity for which one could be charged with a criminal offense. A statute in another chapter of Title 18, § 2246(2), defines a "sexual act," but that definition

5

explicitly excludes touching made through the clothing of the genitalia of a person under the age of 16.

We have yet to consider whether § 2246(2)'s definition of "sexual act" also defines "sexual activity" under § 2422(b). We note that our sister circuits that have considered this issue are split. The Seventh Circuit has determined that "sexual activity" under § 2422(b) is synonymous with "sexual act" as defined in § 2246(2). *United States v. Taylor*, 640 F.3d 255, 257-60 (7th Cir. 2011). On the other hand, the Fourth and Ninth Circuits have explicitly rejected *Taylor*'s holding and have concluded that the definition of "sexual activity" in § 2422(b) is not limited to the definition of "sexual act" found in § 2246(2). *United States v. Shill*, 740 F.3d 1347, 1351-52 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 147 (2014); *United States v. Fugit*, 703 F.3d 248, 254-56 (4th Cir. 2012), *cert. denied*, 134 S. Ct. 999 (2014) (concluding that "sexual activity" is defined as the "active pursuit of libidinal gratification").

We decline to resolve the issue here. Even assuming that Defendant is correct that the jury instruction should have used the § 2246(2) definition of "sexual act" to define "sexual activity"—and that it therefore should not have included, as a prohibited act, touching over clothing—the error is harmless. This is so because the evidence at trial did not indicate that Defendant had attempted to persuade "Paul" to engage in touching through clothing. Instead, the evidence

overwhelmingly reflects that Defendant had attempted to persuade "Paul" to engage in "sexual activity" that clearly fits within the definition of "sexual act" found in § 2246(2).

Specifically, after learning that "Paul" was 15 years old, Defendant continued to message him. In these communications, Defendant assured "Paul" that the two-hour lull in conversation did not mean that he was concerned about "Paul's" age, discussed "Paul's" sexual orientation and "Paul's" experience with receiving oral sex, and sent "Paul" two pencil drawings of men engaged in sexual acts. Defendant initially expressed his regret that "Paul" was not 18 years old so that he could perform sex acts, including oral sex, on "Paul." But Defendant also sent "Paul" a pencil drawing of men engaging in anal sex, and asked "Paul" if that was his "next big sexual step."

On July 14, Defendant and "Paul" continued to chat and Defendant stated that he wished "Paul" was 17 years old. Defendant told "Paul" that he wished he could teach "Paul" about "intense passionate man love" and stated that he was an excellent teacher. Defendant also questioned "Paul" about his preferred sexual position, the size and appearance of his penis, and his grooming habits. Defendant stated to "Paul" that because "Paul" shaved his pubic hair, it meant that Defendant would not get hair in his mouth.

The following day, July 15, Defendant became very direct about the sexual act he wanted to perform with "Paul." He discussed his ability to perform oral sex and indicated that "Paul" would soon know about Defendant's ability. On July 16, Defendant asked "Paul" whether it was a good day for him to lose his virginity. Defendant described what he wanted to do to "Paul," including "kiss, lick, and suck" his genitalia, and he went on to instruct "Paul" to have phone sex.

About 30 minutes later, Defendant began making plans to meet with "Paul." Defendant said that he wished "Paul" was 16 years old so Defendant could be with him, but stated that he was tempted to come by "to hug and kiss" "Paul." "Paul" responded that Defendant stopping by "would be really sweet." An hour and a half later, "Paul" and Defendant discussed which window Defendant should use to sneak into "Paul's" room and that "Paul" would be home alone until 7 p.m. Another hour later, Defendant stated that he was free and asked whether "Paul" wanted him to visit. "Paul" replied "sure" and told Defendant where he lived. Despite his prior statement that he wanted to come by to "hug and kiss" "Paul," Defendant affirmatively responded to "Paul's" question about whether he was bringing his tongue when he came over. Defendant was arrested when he showed up at "Paul's" apartment. When arrested, Defendant had two condoms in his pocket.

8

As noted, Defendant has argued that 18 U.S.C. § 2246(2) sets the parameters of any prohibited sexual act and that, because it excludes intentional touching through clothing as a prohibited act, the trial court's inclusion of that conduct in the list of prohibited acts rendered erroneous its instruction.  Yet, even assuming that § 2246(2) provides the definition of "sexual activity" at issue in this case, we conclude that the trial court's mention of the above act had no impact on the jury's deliberations and was harmless.  We reach this conclusion because any fair reading of the evidence indicates that the acts that Defendant indicated he wanted to engage in with "Paul" fit the definition of "sexual act" set out in the statute that Defendant argues should have supplied the definition for "sexual activity" in this case:  18 U.S.C. § 2246(2).  The evidence indicated that Defendant had expressed his intent, upon meeting "Paul," to perform oral sex on the latter.  Oral sex would constitute a "sexual act" under § 2246(2)(B).  Defendant had also expressed interest in anal sex, which if consummated, would constitute a violation of § 2246(2)(A).  He had also indicated that he wanted to "kiss, lick, and suck" "Paul's" genitalia:  an act that would violate § 2246(2)(D)'s prohibition on the intentional touching, not through clothing, of the genitalia of a person under the age of 16.

Stated another way, Defendant's stated intentions toward "Paul" did not indicate the desire to touch the latter through his clothing.[3] To the contrary, a clothed "Paul" did not form a part of Defendant's articulation of his anatomically graphic and vivid erotic intentions towards the young man. Further, in his closing argument, the prosecutor never even hinted that the jury should convict the Defendant if it merely found that he had attempted to encourage "Paul" to allow himself to be touched through his clothing. Indeed, that would have been an odd argument to make as the evidence never indicated that Defendant had expressed such an intention. Rather, the prosecutor focused on the very serious sexual acts that Defendant was, in fact, proposing: acts that would clearly fit within any definition of sexual activity.

In light of the above evidence, we are satisfied beyond a reasonable doubt that any error in instructing the jury that "sexual activity" included intentional touching over clothing did not contribute to the jury's guilty verdict. Accordingly, even if the giving of that instruction was error, it was harmless error.

---

[3] Nor is our analysis altered by the fact that, during one of his four conversations with "Paul" on the day of the planned assignation, Defendant mentioned that he would like "to hug and kiss" "Paul." In contrast to his repeated discussion of oral sex and other sex acts, Defendant made one isolated reference to this desire "to hug and kiss" "Paul." At any rate, the jury would have understood that it could not convict Defendant had it concluded that hugging and kissing was his sole goal because hugging and kissing is not a prohibited sex act or sexual activity under any definition of the latter terms at issue here.

10

B.    Constructive Amendment of Indictment

Defendant argues for the first time on appeal that the district court's erroneous definition of "sexual activity" in its instructions served to constructively amend the indictment by broadening the basis for conviction and making it possible that the jury convicted him of touching through clothing.

We generally review *de novo* whether a district court's jury instruction constructively amended the indictment. *United States v. Gutierrez*, 745 F.3d 463, 473 (11th Cir. 2014). However, because Defendant did not raise this argument below, we review this issue for plain error. *See United States v. Madden*, 733 F.3d 1314, 1322 & n.6 (11th Cir. 2013). Under plain error review, we will reverse where there is "(1) an error (2) that is plain and (3) that has affected the defendant's substantial rights; and . . . (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1322.

A constructive amendment to the indictment occurs "when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment." *United States v. Mozie*, 752 F.3d 1271, 1283 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 422 (2014).

For Defendant to prevail on this argument, he would have to be right that "sexual activity" under § 2422(b) has to be defined the same as "sexual act" under

11

§ 2246(2).  Yet, as discussed above, neither the Supreme Court nor this Court has ever addressed this issue, and the other circuits that have considered it are split. Accordingly, any alleged error cannot be "plain."  *See United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005) ("When neither the Supreme Court nor this Court has resolved an issue, and other circuits are split on it, there can be no plain error in regard to that issue.").

C.    Entrapment Jury Instruction

Lastly, Defendant argues that the district court erred in denying his request for an instruction on the entrapment defense.  He asserts that, contrary to the district court's determination, he presented sufficient evidence of governmental inducement to warrant the entrapment instruction.  We disagree with Defendant and conclude that the district court did not err in disallowing Defendant's proposed entrapment defense.

The failure to give a particular "instruction is reversible error where the requested instruction (1) was correct, (2) was not substantially covered by the charge actually given, and (3) dealt with some point in the trial so important that the failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense."  *United States v. Eckhardt*, 466 F.3d 938, 947-48 (11th Cir. 2006).  There are two elements to an entrapment claim:  (1) governmental inducement of the crime and (2) the defendant's lack of

predisposition to commit the crime before the inducement. *United States v. Orisnord*, 483 F.3d 1169, 1178 (11th Cir. 2007). In order to be allowed to present an entrapment defense, a defendant bears the initial burden of production as to the element of governmental inducement. *United States v. Sistrunk*, 622 F.3d 1328, 1333 (11th Cir. 2010). The sufficiency of the defendant's evidence of governmental inducement is a legal issue to be decided by the trial court. *Id*. at 1332. Once the defendant has met his burden of production as to governmental inducement, the burden then shifts to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime. *Id.*

Here, the district court decided that Defendant had produced insufficient evidence to support an entrapment defense and the court therefore declined to give an entrapment instruction. Accordingly, we focus on whether the Defendant met his burden of producing evidence that the government had induced him to commit the crime. A defendant can show inducement by the production of evidence sufficient to create a jury issue that the government "created a substantial risk that the offense would be committed by a person other than one ready to commit it." *United States v. Brown*, 43 F.3d 618, 623 (11th Cir. 1995). The defendant meets this burden if he produces evidence that the government's conduct included some form of persuasion or mild coercion. *Id*. Such persuasion may be shown by evidence that the defendant "had not favorably received the government plan, and

13

the government had to 'push it' on him, or that several attempts at setting up an illicit deal had failed and on at least one occasion he had directly refused to participate." *United States v. Ryan*, 289 F.3d 1339, 1344 (11th Cir. 2002). But the government's mere suggestion of a crime or initiation of contact is insufficient to demonstrate inducement. *Brown*, 43 F.3d at 623.

We typically review a district court's refusal to give a requested jury instruction for an abuse of discretion. *Eckhardt*, 466 F.3d at 947. But when it comes to reviewing a district court's decision not to give an entrapment instruction, based on the defendant's failure to produce sufficient evidence of governmental inducement, this Circuit's caselaw is unclear. Some of our cases have applied a *de novo* standard of review to this question, while others have reviewed the trial court's decision under an abuse of discretion standard. *See Sistrunk*, 622 F.3d at 1333 (collecting cases). In *Sistrunk*, we found no need to decide which standard is applicable because under either a *de novo* or an abuse of discretion standard, the defendant's evidence was insufficient to support a conclusion that the government had induced him to commit the present crime. Likewise, we also conclude here that, under either standard, Defendant failed to show governmental inducement.

In this case, the evidence shows that the detective did little more than provide Defendant with an opportunity to make contact with a teenaged boy. The Defendant took it from there. Thus, while the detective set up "Paul's" profile, it

14

was Defendant who initiated the conversation between himself and "Paul" by sending the latter three messages in which he expressed his interest in "Paul." Even after learning that "Paul" was only 15, Defendant continued the conversations by sending unsolicited sexually explicit images and engaging in progressively more sexually explicit conversations, such as discussing oral sex, genitalia size, grooming habits, and instructing "Paul" to have phone sex. Additionally, Defendant was the one who suggested that he and "Paul" meet and he asked if "Paul" wanted him to visit. "Paul" merely agreed to the idea after Defendant had brought it up.

Contrary to Defendant's argument, the fact that "Paul" sent the first message of the day on three of the five days does not establish that the detective repeatedly initiated conversations with Defendant. As the detective's trial testimony and the messages show, the detective was simply continuing the conversations from the prior night, not initiating new conversations. In his final message on July 12, Defendant sent "Paul" a hand-drawn picture of men engaging in anal sex. "Paul" responded to that message on the following day, July 13. Defendant then responded to "Paul's" message, but "Paul" did not respond to Defendant until July 14. On July 15, Defendant responded to "Paul's" prior message at 11 p.m., and "Paul" did not respond until the next morning. In any event, even if some of

15

"Paul's" messages were viewed as restarting conversations, this is not enough to meet Defendant's burden to show inducement. *See Brown*, 43 F.3d at 623.

Finally, Defendant's comments expressing his wish that "Paul" was older or that Defendant was younger do not demonstrate that Defendant "had not favorably received the government plan, and the government had to 'push it' on him, or that several attempts at setting up an illicit deal had failed and on at least one occasion he had directly refused to participate." *Ryan*, 289 F.3d at 1344. Notwithstanding these occasional protestations, Defendant enthusiastically courted "Paul."

In short, it was Defendant who, with great gusto, escalated the sexual nature of the conversations and ultimately made arrangements to meet with "Paul." Because Defendant failed to produce evidence that the government had induced his conduct, the district court did not err in refusing to instruct the jury on entrapment.

### III. Conclusion

For the reasons stated above, Defendant's conviction is **AFFIRMED.**