[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12265
Non-Argument Calendar

_____

D.C. Docket No. 4:18-cr-10025-KMM-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JAVARS ANQUN DAVIS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 26, 2020)

Before WILLIAM PRYOR, JILL PRYOR, and EDMONDSON, Circuit Judges.

PER CURIAM:

Javars Davis appeals his convictions for (1) possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Counts 1-4); and (2) possession with intent to distribute at least 28 grams of a mixture of heroin and crack cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii) (Count 5).  Davis also challenges as substantively unreasonable his total 327-month sentence for his offenses.  No reversible error has been shown; we affirm.

Between April and August 2017, a detective with the Monroe County Sheriff's Office used a confidential informant ("CI") to arrange four controlled-drug buys from Davis.  During the controlled-drug buys, the CI purchased from Davis heroin and crack cocaine.

On 7 March 2018, Deputy O'Connell (who had no involvement in and was unaware of the controlled-drug buys) pulled Davis's car over for illegal window tinting.  During the traffic stop, Davis told Deputy O'Connell that Davis had a suspended license and that warrants were out for his arrest.  After confirming that Davis had several active outstanding arrest warrants, Deputy O'Connell arrested

Davis.  During a warrantless search of Davis's person and car, officers found various drugs, drug paraphernalia, and almost $2000 in cash.

## I.

On appeal, Davis first contends that the district court erred in denying his motion to suppress evidence seized during the 7 March 2018 search.  Davis argues that Deputy O'Connell lacked probable cause to initiate the traffic stop.  As a result, Davis seeks reversal of his conviction for Count 5.  In response, the government asserts that -- under the totality of the circumstances -- probable cause existed to stop Davis's car for violating Florida's window-tint statute.

We review the district court's denial of "a motion to suppress evidence under a mixed standard, reviewing the court's findings of fact for clear error and the application of law to those facts de novo, construing the facts in the light most favorable to the prevailing party below." United States v. Pierre, 825 F.3d 1183, 1191 (11th Cir. 2016).  The party challenging a search "bears the burdens of proof and persuasion." United States v. Newsome, 475 F.3d 1221, 1224 (11th Cir. 2007).

3

"Pursuant to the Fourth Amendment, police may stop a vehicle if they have probable cause to believe that a traffic violation has occurred." Pierre, 825 F.3d at 1192. "Probable cause exists where the facts and circumstances within the collective knowledge of the law enforcement officials are sufficient to cause a person of reasonable caution to believe an offense has been or is being committed." Id. (alteration omitted).

Florida law prohibits driving a vehicle on a public roadway if the vehicle's front or side windows have been "treated with any sunscreening material or other product or covering which has the effect of making the window nontransparent or which would . . . reduce its light transmittance" below the statutory threshold of "28 percent in the visible light range." Fla. Stat. § 316.2953. We have said that driving with unlawfully tinted windows "provides a valid basis for a traffic stop." See Pierre, 825 F.3d at 1192.

The district court committed no error in denying Davis's motion to suppress the drugs and other evidence found during the search following the traffic stop. At a suppression hearing, Deputy O'Connell testified that, on the night of 7 March, she observed a car (driven by Davis) with dark window tint. When Deputy O'Connell pulled alongside the car, she was unable to see the dashboard lights through the driver's side window or to identify the driver's features. Based on her

4

training and experience, Deputy O'Connell believed the car's window tint was in violation of Florida law and, thus, initiated a traffic stop.

The magistrate judge found that Deputy O'Connell's testimony about the appearance of the window tint was both "fully credible" and corroborated by video footage from Deputy O'Connell's body camera. The district court adopted the magistrate judge's findings. Davis has failed to show that the district court's credibility determination or factual findings were either clearly erroneous or improbable on their face. See United States v. Shabazz, 887 F.3d 1204, 1215 (11th Cir. 2018) ("We accord great deference to a district court's credibility determinations" and "accept the evidence credited by the district court 'unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it.'").

Because an objective officer under the circumstances could have believed reasonably that Davis's car was in violation of Florida's window-tint statute, Deputy O'Connell had probable cause to initiate a traffic stop. See Pierre, 825 F.3d at 1192 (concluding probable cause existed to stop a car for illegally tinted windows based on the officer's credible testimony that he was unable to see inside the car). That the window tint on Davis's car (later measured to have a light transmittance of 31% and 33%) was in fact within the statutory limit does not

make the traffic stop unlawful.  See United States v. Chanthasouxat, 342 F.3d 1271, 1276 (11th Cir. 2003) ("A traffic stop based on an officer's incorrect but reasonable assessment of facts does not violate the Fourth Amendment.").  The district court committed no error in denying Davis's motion to suppress.


II.


Davis next contends that the district court erred in refusing to instruct the jury on an entrapment defense to Counts 1 through 4 based on the CI's involvement in the controlled drug sales.

We review de novo a district court's refusal to instruct the jury on entrapment.  United States v. Dixon, 901 F.3d 1322, 1346-47 (11th Cir. 2018).  We view the evidence in the light most favorable to the defendant.  United States v. Ryan, 289 F.3d 1339, 1344 (11th Cir. 2002).

An entrapment defense requires proof of two separate elements: "(1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant."  United States v. Brown, 43 F.3d 618, 623 (11th Cir. 1995).  "The defendant bears the initial burden of production to show government inducement" and, if the defendant succeeds, the burden "shifts to the government to prove

6

beyond a reasonable doubt that the defendant was predisposed to commit the crime." Id. Once the defendant meets his initial burden, "the question of entrapment becomes a factual one for the jury to decide" and the defendant is entitled to a jury instruction on entrapment. Ryan, 289 F.3d at 1344.

To show government inducement, a defendant must produce evidence sufficient to raise a jury question about whether "the government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it." Id. at 1343-44. Although the defendant's burden at this stage is "light," he must show more than "the government's mere suggestion of a crime or initiation of contact." Brown, 43 F.3d at 623. Instead, evidence must exist, at least, of persuasion, "mild coercion," or "manipulation of a non-criminal motive." Id. For instance, a defendant may show that he "had not favorably received the government plan, and the government had to 'push it' on him, or that several attempts at setting up an illicit deal had failed and on at least one occasion he had directly refused to participate." See Ryan, 289 F.3d at 1344.

Here, Davis presented no evidence of government inducement. Although the CI initiated contact with Davis, nothing evidences that Davis was unduly persuaded, coerced, or manipulated into selling drugs to the CI. Instead, recordings of the conversations between the CI and Davis show that Davis -- on

7

four separate occasions -- agreed readily to meet the CI for the purpose of selling drugs. Never did Davis express hesitation about selling drugs to the CI; Davis seemed to need no encouragement to carry out the transactions.

On appeal, Davis asserts that the investigating officers had no information about whether the CI and Davis had other contacts or conversations outside of the controlled-drug buys. In other words, Davis seems to hint that some persuasion or coercion could have happened but was not recorded. Davis has never claimed, however, that such a supposed additional contact or conversation in fact occurred. Most important, Davis has produced no evidence of such a contact or conversation. We stress that the burden to show government inducement rests with Davis. Because Davis produced no evidence of government inducement, he failed to meet his burden and was unentitled to a jury instruction on entrapment.

### III.

We review the reasonableness of a sentence under a deferential abuse-of-discretion standard. See Gall v. United States, 552 U.S. 38, 41 (2007). "The party challenging a sentence has the burden of showing that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference

afforded sentencing courts." United States v. Rosales-Bruno, 789 F.3d 1249, 1256 (11th Cir. 2015). In a case like this one, we can vacate a sentence only when "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008).

We evaluate a sentence's substantive reasonableness by considering the totality of the circumstances. See Gall, 552 U.S. at 51. A sentence substantively is unreasonable if it "fails to achieve the purposes of sentencing as stated in section 3553(a)." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). Under section 3553(a), a district court should consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to provide adequate deterrence, respect for the law, and protection of the public, policy statements of the Sentencing Commission, provision for the medical and education needs of the defendant, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(1)-(7). The weight given to a specific section 3553(a) factor is a matter committed to the sound discretion of the district court. United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007).

9

Davis has failed to demonstrate that his total sentence of 327 months is substantively unreasonable. As an initial matter, that Davis's sentence is both within the applicable guidelines range (262 to 327 months) and well below the statutory maximum sentence (480 months) points to reasonableness. See United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008).

On appeal, Davis contends that the district court erred by ignoring all the section 3553(a) factors except for Davis's criminal history. Davis's argument is plainly contradicted by the record. At the sentencing hearing, the district court said directly that it had considered the section 3553(a) factors. This statement alone is enough to show that the district court considered the pertinent factors in determining Davis's sentence. See United States v. Turner, 474 F.3d 1265, 1281 (11th Cir. 2007) (explaining that the district court need not discuss each section 3553(a) factor: "an acknowledgment by the district judge that he or she has considered the § 3553(a) factors will suffice.").

Moreover, the district court did specifically discuss several of the section 3553(a) factors in imposing Davis's sentence. After describing Davis's prior convictions, the district court explained that -- given Davis's extensive criminal history -- a sentence at the top of the guidelines range was necessary to promote

10

respect for the law, to provide adequate deterrence, and to protect the public from future crimes committed by Davis.

AFFIRMED.