[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 18, 2006
THOMAS K. KAHN
CLERK

No. 05-16324
Non-Argument Calendar

_____

D. C. Docket No. 05-00084-CR-T-30-TGW

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RODRIGO ROMERO BORRERO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(September 18, 2006)**

Before TJOFLAT, BIRCH and WILSON, Circuit Judges.

PER CURIAM:

Rodrigo Romero Borrero appeals his sentence following his guilty plea to

possession with the intent to distribute and conspiracy to possess with the intent to distribute five or more kilograms of cocaine while on board a vessel subject to the jurisdiction of the United States statutes, pursuant to 46 App. U.S.C. §§ 1903(a), (g), (j); 21 U.S.C. § 960(b)(1)(B)(ii). After reviewing the record and parties' arguments, we conclude that the district court correctly calculated Borrero's sentence under the Sentencing Guidelines. Borrero's argument that United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), precludes the court from enhancing his sentence based on facts that he did not admit is without merit because the district court applied the guidelines as advisory and enhanced Borrero's sentence based on additional factual findings by a preponderance of the evidence. For these reasons, we AFFIRM.

## I. BACKGROUND

According to the unobjected to facts in the presentence investigation report, the USS BOONE was conducting counter-drug operations in the Eastern Pacific when it spotted a go-fast vessel with Borrero on board. As the USS BOONE approached, the go-fast vessel began maneuvering erratically, and two crew members threw bales overboard. After unsuccessful attempts to stop the go-fast vessel, the USS BOONE fired shots at the vessel to disable it.

2

Epifanio Moreno, a crew member, stated that the drug representative, who was responsible for guarding drugs and conducting the sale of the drugs, told him to throw a rifle overboard. The USS BOONE boarding team discovered a dead body on board, which was identified by the other crew members as the drug representative. The crew members stated that the drug representative killed himself with a handgun to avoid capture. After the drug representative shot himself, Borrero took the handgun and threw it in the water to prevent Moreno from killing himself. The USS BOONE recovery team recovered 56 bales of cocaine from the ocean for a total of 2,800 pounds or 1,270 kilograms of cocaine.

The presentence investigation report applied a two-level enhancement to Borrero's offense level, pursuant to U.S.S.G. § 2D1.1(b)(1) (2004), because there were two firearms on board the go-fast vessel, which were thrown overboard as the USS BOONE approached. With a criminal history category of I and a total offense level of 37, his guideline imprisonment range was 210 to 262 months.

At his sentencing hearing, Borrero reasserted his objection to the firearm enhancement. The government replied that it was reasonably foreseeable that a gun was on board because Borrero's codefendants reported that Borrero had participated in other smuggling voyages in which a drug representative, or "load guard," had been armed in order to protect the cocaine. R2 at 9. Borrero's

attorney responded that, while Borrero saw the drug representative with a gun when he was boarding, Borrero had no control over the drug representative and that he had no choice but to continue with the voyage. The district court overruled Borrero's objection and found that it was foreseeable that a firearm was on board.

Borrero also argued that he was entitled to a minor-role reduction because his role as a mechanic was limited to changing spark plugs, because he was paid a fixed amount that was not based on the value of the cocaine, and because he was less culpable than the captain and load guard. Borrero called FBI Special Agent Lincoln Benedicto to testify regarding Borrero's role in the crime. Benedicto testified that from his investigation, he learned that in addition to Borrero and his codefendants, eight to ten people had organized the cocaine smuggling trip and that Borrero was "as culpable as the other individuals." R2 at 30. Benedicto admitted, however, that the other eight to ten individuals held positions at various levels of the conspiracy, with varying degrees of responsibility, and that some had an equity interest in the profits.

Borrero was the only mechanic aboard the go-fast vessel with the responsibility for maintaining three large, complicated inboard engines. His responsibility was to get the boat from the coast of Colombia to an unknown final destination, which could have been thousands of miles away. When asked how

4

many of the additional individuals identified by Benedicto had relatively the same function as Borrero, Benedicto replied that Borrero's function as a mechanic was unique. According to Benedicto, "Borrero's responsibility as a mechanic on this vessel carrying millions of dollars of cocaine is pretty big. It is on his shoulders alone to make sure they can get across the ocean." R2 at 34. Borrero was hired because of his experience with inboard diesel engines on go-fast boats, which often have mechanical difficulties.

The court found that Borrero qualified for the safety valve provision and sentenced him to 168 months imprisonment on both counts to run concurrently. On appeal, Borrero argues that he is entitled to a minor-role reduction, pursuant to U.S.S.G. § 3B1.2(b), because he was less culpable than the eight to ten other individuals who were directly involved in the conspiracy to transport 1,270 kilograms of cocaine. Borrero argues that the district court erred in imposing a two-level sentencing enhancement for possession of a firearm during the drug offense because his deceased co-conspirator brought the firearm on board, and because, once he was hired, he could not quit. Finally, Borrero argues, for the first time on appeal, that the sentencing enhancement for possessing a firearm violates Booker, because he did not plead guilty to the facts upon which the enhancement was based.

## II. DISCUSSION

We review the district court's findings regarding whether a defendant qualifies for a minor role adjustment under the guidelines for clear error. United States v. Ryan, 289 F.3d 1339, 1348 (11th Cir. 2002) (per curiam). We also review for clear error the district court's findings of fact when it enhances a defendant's sentence in cases involving the use of a firearm in conjunction with an eligible crime and review the application of the sentencing guidelines de novo. United States v. Gallo, 195 F.3d 1278, 1280 (11th Cir. 1999). Booker claims raised for the first time on appeal are reviewed for plain error. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.), cert. denied, __ U.S. __, 125 S. Ct. 2935 (2005). We review Borrero's three challenges, related to these standards of review, in turn.

A. Minor-Role Adjustment

The defendant has the burden of establishing his minor role by a preponderance of evidence. Ryan, 289 F.3d at 1348. "So long as the basis of the trial court's decision is supported by the record and does not involve a misapplication of a rule of law, we believe that it will be rare for an appellate court to conclude that the sentencing court's determination is clearly erroneous." United States v. Rodriguez De Varon, 175 F.3d 930, 945 (11th Cir. 1999) (en banc)

6

(emphasis omitted).  As long as the district court's decision is supported by the record, the sentencing judge need not make specific subsidiary factual findings regarding the defendant's role in the offense.  Id. at 939.

Pursuant to U.S.S.G. § 3B1.2, the defendant is entitled to a two point decrease in his offense level if he was a minor participant.  According to the commentary, the determination of whether a defendant qualifies for a decrease is "heavily dependent upon the facts of the particular case."  U.S.S.G. § 3B1.2 cmt. n.3(C).  A "minor participant" is a person who is "less culpable than most other participants, but whose role could not be described as minimal."  Id. at cmt. n.5.

The district court conducts a two-pronged analysis to determine if the defendant warrants a minor-role adjustment.  Ryan, 289 F.3d at 1348.  "First, the district court must assess whether a defendant's particular role was minor in relation to the relevant conduct attributed to him in calculating his base offense level."  Id.  Even "when a drug courier's relevant conduct is limited to [his] own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs."  Rodriguez De Varon, 175 F.3d at 942–43.  Furthermore, "in the drug courier context . . . the amount of drugs imported is a material consideration in assessing a defendant's role in her relevant conduct."  Id. at 943.  The amount of drugs can be dispositive

of this issue in the extreme case.  Id.

Here, the district court did not clearly err in denying Borrero a minor-role reduction.  With regard to the first prong of the <u>Rodriguez De Varon</u> test, Borrero did not show that he played a relatively minor role in the conduct for which he was held accountable; that conduct being his work as the only mechanic on a go-fast vessel transporting 1,270 kilograms of cocaine.  It was Borrero's job to ensure the go-fast boat went fast, which is no minor role in this crime.  Furthermore, the amount of cocaine involved was large and was a material factor in assessing Borrero's role.  Only if the first prong is met does the district court reach the second prong, which "requires the district court to assess a defendant's relative culpability vis-a-vis that of any other participants."  <u>Ryan</u>, 289 F.3d at 1349. Because the first prong was not met, we need not reach the second prong.  Because Borrero's conduct was not minor in relation to the charged conduct, he is not entitled to a minor-role reduction.

## B.  <u>Fire Arm Possession</u>

The Sentencing Guidelines provide a two level increase "[i]f a dangerous weapon (including a firearm) was possessed."  U.S.S.G. § 2D1.1(b)(1).  "The adjustment should be applied if the weapon was present, unless it is clearly

8

improbable that the weapon was connected with the offense." Id. at cmt. n.3.

[F]or a § 2D1.1(b)(1) firearms enhancement for co-conspirator possession to be applied to a convicted defendant, the government must prove by a preponderance of the evidence: (1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant.

Gallo, 195 F.3d at 1284 (footnote omitted) (emphasis removed).

Once the government has shown that a firearm was present at the site of the charged conduct, "the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable." United States v. Fields, 408 F.3d 1356, 1359 (11th Cir.), cert. denied, __ U.S. __, 126 S. Ct. 221 (2005). We observed that it was not clearly improbable that co-conspirators trafficking in lucrative drug deals to "[feel] the need to protect their inventory and proceeds as well as themselves while they were engaging in that high risk activity." Id. at 1359.

In this case, the district court did not err in finding that Borrero failed to meet his burden of showing that it was clearly improbable that the firearms were connected with the drug conspiracy. Borrero does not dispute that the deceased drug representative was a co-conspirator or that Borrero was a member of the conspiracy at the time of possession. In addition, the foreseeability prong is satisfied because Borrero admits that he saw the rifle upon boarding, and it would

9

have been reasonably foreseeable that the drug representative would have been armed. Finally, Borrero has failed to establish that the connection between the firearm and the drug conspiracy was clearly improbable because the drug representative brought the gun on board to protect the cocaine and the co-conspirators, as they were engaged in a high-risk activity.

C. Booker Challenge

In Booker, the Supreme Court held that the Sentencing Guidelines are advisory and that district courts should consider the sentencing factors set forth in 18 U.S.C. § 3553 when imposing a sentence. Booker, 543 U.S. at 245–46, 125 S. Ct. at 757. However, if the district court applies the guidelines as advisory, nothing in Booker prohibits district courts from finding by a preponderance of the evidence, facts that go beyond a defendant's admission. See United States v. Chau, 426 F.3d 1318, 1324 (11th Cir. 2005) (per curiam). Because the district court did properly make the fact findings by a preponderance of the evidence, there was no Booker error. Because there was no error, there could be no plain error. See United States v. Pielago, 135 F.3d 703, 709 (11th Cir. 1998).

### III. CONCLUSION

Borrero has appealed his sentence following his guilty plea to possession with the intent to distribute and conspiracy to possess with the intent to distribute five or more kilograms of cocaine while on board a vessel subject to the jurisdiction of the United States statutes. After reviewing the record and parties' arguments, we conclude that the district court correctly calculated Borrero's sentence under the Sentencing Guidelines and that Borrero's argument that <u>Booker</u> precluded the court from enhancing his sentence based on facts that he did not admit is without merit. **AFFIRMED**.