[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-13940
No. 06-11096

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 10, 2007
THOMAS K. KAHN
CLERK

D. C. Docket Nos. 04-00457-CR-T-30-MSS-008, 04-00457-CR-T-20MAP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HUGO SALAZAR,
a.k.a. Mexico,
JUAN BAUTISTA LUGO,
ISMAEL ROLON AYALA,
a.k.a. Flaco,

Defendants-Appellants.

versus

ALEXIS ROLON AYALA,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(May 10, 2007)**

Before CARNES, WILSON and HILL, Circuit Judges.

PER CURIAM:

This appeal involves four defendants. Three of the defendants, Juan Bautista Lugo, Ismael Rolon Ayala, and Hugo Salazar, were tried and found guilty of conspiracy to possess with the intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(I) and § 846. The other appellant, Alexis Ayala, entered a guilty plea before the trial.

The charges against the defendants stem from their involvement in a heroin distribution scheme that began in the middle of 2001 and lasted until September 2004. The manager and supervisor of the heroin distribution ring was Ismael Ayala. The other three defendants performed various duties to further the conspiracy, including selling, packaging, and transporting heroin. Although the heroin was sold at many different locations, the principal place of distribution was a warehouse on 15th Street in Bradenton, Florida. This is their consolidated appeal. We will discuss each defendant's appeal in turn.

## I. HUGO SALAZAR

Salazar is a tattoo artist by trade. Trial testimony indicated that he met the other co-conspirators while purchasing heroin for personal use. Sometime thereafter, he then began giving tattoos to members of the conspiracy in exchange

for heroin.  Eventually, he began selling heroin at the 15th Street warehouse, and at some point later on, he began assisting in the packaging of the heroin and in the transportation of the drugs and drug proceeds from one location to another.

On appeal Salazar makes two contentions:  (1) that there was insufficient evidence to support his conviction and (2) that the government's use of a spiral-bound notebook that listed Salazar's street name, "Mexico," constitutes reversible error.

Salazar's first contention stems from the defense he presented at trial:  he was a drug user, not a drug salesman.  Although he acknowledges hanging out at the 15th Street warehouse, he argues that the evidence implicating him in the conspiracy either lacked credibility or was not properly admitted.  More specifically, he argues that the testimony of his co-conspirators is insufficient because: (1) the co-conspirators gave conflicting testimony as to the timing and scope of his participation in the conspiracy; (2) each co-conspirator hoped to curry favor with the government by implicating Salazar; and (3) the only physical evidence connecting him to the conspiracy is insufficient to support his conviction.

We review <u>de novo</u> the sufficiency of the evidence supporting guilt beyond a reasonable doubt.  <u>United States v. Garcia</u>, 405 F.3d 1260, 1269 (11th Cir.

2005). "[We] consider whether, under the totality of the circumstances, there is sufficient evidence to support a jury verdict when the facts are viewed in the light most favorable to the government." United States v. Mieres-Borges, 919 F.2d 652, 658 (11th Cir. 1990). We also review the jury's credibility choices in the government's favor. Id. at 656. Although Salazar may put forth an interpretation of the evidence that would not support a jury verdict against him, the government need not disprove every reasonable hypothesis except guilt. Id. Instead, we determine whether the jury made a reasonable construction of the evidence. Id. If that construction paints a picture of guilt beyond a reasonable doubt, this Court will not reverse the jury's verdict. Id.

Concerning the testimony of co-conspirators, "an unbroken stream of precedent in this circuit has established that the uncorroborated testimony of a co-conspirator or accomplice is sufficient to prove guilt beyond a reasonable doubt." Craig v. Singletary, 127 F.3d 1030, 1044 (11th Cir. 1997). In this case, at least four witnesses testified that Salazar had sold, packaged, and transported heroin in furtherance of the overall conspiracy. Although Salazar correctly points out some discrepancies in the testimony against him, those discrepancies relate only to the timing and scope of his participation. No one testified that Salazar was not a part of the conspiracy. It is unremarkable that different co-conspirators

4

would have different recollections of the precise moment when Salazar joined them. The jury obviously thought that he was part of the conspiracy, and the testimony was sufficient for them to make that inference.

The physical evidence that Salazar challenges is a spiral-bound notebook that apparently was never admitted into evidence by the district court. The notebook was discovered in Ismael Ayala's BMW by Detective Paul Davis. When Detective Davis found the notebook, it had been stashed in a secret compartment where the car's driver side airbag should have been.

Only one page in the notebook related to Salazar. That page listed Salazar's street name, "Mexico." The entry did not list any dates, dollar amounts, or drug quantities. Instead, next to Salazar's street name was a symbol—either an "X" or the number "1" with a slash through it. The author of the notebook entry had drawn an arrow connecting Salazar's street name to the symbol. The government made a general reference to the notebook while questioning a witness, and later, during closing arguments, published the page with Salazar's street name on it to the jury.

On appeal, Salazar makes two arguments about the notebook. His first argument, part of his insufficiency of the evidence contention, is that the mere appearance of his street name in the notebook next to an ambiguous symbol does

5

nothing to establish his participation in the conspiracy. That argument does not help Salazar, because without the notebook there is abundant evidence proving his guilt beyond a reasonable doubt.

His other argument is that the government's use of the notebook during the trial requires us to reverse his conviction. Because Salazar did not object to the government's publication of the notebook to the jury, our review is only for plain error. United States v. Baker, 432 F.3d 1189, 1202 (11th Cir. 2005). "Likewise, when a defendant does not object at trial to statements made by the prosecution, we review under the same plain error standard." United States v. Williams, 445 F.3d 1302, 1307 (11th Cir. 2006). "Under the plain error standard, before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights." Id. at 1308. To affect a defendant's substantial rights, the error "must have affected the outcome of the district court proceedings. The standard for showing that is the familiar reasonable probability of a different result formulation, which means a probability sufficient to undermine confidence in the outcome." United States v. Rodriguez, 398 F.3d 1291, 1299 (11th Cir. 2005) (quotation marks and citations omitted).

Even assuming that the district court plainly erred by allowing any reference to the notebook during testimony and closing arguments, that error did not affect

Salazar's substantial rights. The testimony against him specifically identified him as a drug packager, courier, and salesman. That testimony was far more probative of Salazar's guilt than the notebook entry. There is no reasonable probability that the jury would have reached a different verdict if the notebook had never been mentioned.

## II. JUAN BAUTISTA LUGO

Lugo makes three contentions on appeal. His first two contentions involve $9000 in cash that was seized on May 11, 2004 from an automobile that he was driving. On that date, Deputy Michael Kenyan of the Manatee County, Florida Sheriff's Department pulled over Lugo's automobile after he discovered that the number on the car's license plate was registered to a different vehicle. Lugo informed Officer Kenyan that he had rented the car and gave Officer Kenyan a copy of the rental contract. Kenyan took the agreement and returned to his patrol car to verify Lugo's account with the rental car company.

Approximately two minutes after the traffic stop began, another police officer, Deputy Preston Spear, arrived on the scene. While Officer Kenyan was contacting the rental car company, Deputy Spear asked Lugo for permission to search his vehicle. Lugo consented, and Spear searched the car, finding $9000 in the car's center console. The cash was divided into denominations of $900. (The

7

fact that the money was divided into $900 denominations is significant because Ismael Ayala and his co-conspirators sold heroin in quantities priced at $900.) Lugo told Deputy Spear that the money constituted proceeds from a car sale that he had completed earlier in the day, but Lugo had no documentation of the sale. When Deputy Spear informed Lugo that he had to seize the money, Lugo assented without protest. After Deputy Spear finished the search, Officer Kenyan issued a warning ticket to Lugo for driving a vehicle with a license plate that was registered to another vehicle. The entire stop lasted twenty-five minutes.

Lugo's first two contentions on appeal are: (1) that the search of his vehicle violated the Fourth Amendment because Officer Kenyon unreasonably and deliberately delayed issuing the warning ticket so that Deputy Spear could search his car; and (2) that the district court committed plain error by admitting testimony at trial about the $9000 without first requiring the government to admit either photographs of the money or the currency itself.

We review the trial court's findings of fact for clear error, but we review <u>de novo</u> the application of those facts to the law. <u>United States v. Simmons</u>, 172 F.3d 775, 778 (11th Cir. 1999). The Fourth Amendment permits the police to stop an automobile if there is probable cause to believe that a traffic violation has occurred. <u>Id.</u> (citing <u>Whren v. United States</u>, 517 U.S. 806, 810, 116 S. Ct. 1769,

8

1772 (1996)). Here, Lugo does not dispute that there was probable cause for the initial stop of his vehicle. His only contention is that he would have been able to stop Deputy Spear's search before the $9000 was discovered if Officer Kenyan had not unreasonably delayed issuing the warning ticket to him.

Before trial Lugo filed a motion to exclude the $9000. The district court found that Deputy Kenyan had not unreasonably delayed issuing the warning ticket, removing any issue about the validity of the consent. Lugo points to nothing on appeal to persuade us that the district court's factfindings were clearly erroneous, and the district court's legal conclusion that the duration was reasonable is correct.

As for his second contention—that the district court committed plain error by admitting testimony about the $9000 without first requiring the government to admit either photographs of the $9000 or the cash itself—Lugo has apparently overlooked the fact that the district court did admit photographs of the $9000 into evidence. Hence, there was no error.

Lugo's third and final contention is that his sentence is unreasonable. The only argument Lugo clearly makes in support of this contention is that his sentence is the same sentence that he would have received pre-Booker under a mandatory sentencing guidelines regime. That is a specious argument, because

nothing in Booker requires that a court impose a sentence outside of the advisory guidelines range. Lugo's conviction and sentence are due to be affirmed.

### III. ISMAEL AYALA

Ismael Ayala contends that the district court erred by instructing potential jury members during voir dire that they would need to pay close attention during the trial because the trial transcript would "not be available . . . for use during deliberations . . . ." The case law of this circuit grants broad discretion to district court to decide what access, if any, the jury will have to trial transcripts. See United States v. Delgado, 56 F.3d 1357, 1370 (11th Cir. 1995); United States v. Loyd, 743 F.2d 1555, 1567 (11th Cir. 1984). The jury in this case never asked to have any portion of the transcript read back to them, and Ayala presents no arguments on appeal that persuade us that his substantial rights were violated by the district court's instruction. If anything, the district court's instruction probably prompted the jury to pay closer attention to the testimony at trial.

Ayala's second contention is that the government made an improper comment to the jury during its rebuttal closing argument. The attorney for the government made the comment after the defense counsel had admonished the jurors to consider the fact that the government had presented no videotape

evidence of drug activities at the warehouse on 15th Street. The responding comment was as follows:

> Mr. Brown wanted to, you know, again bring up this camera business and suggest to you it was outrageous for the Government to say we couldn't go on anybody's private property and put up a video camera. Well, there's this little thing called the Fourth Amendment. I don't think any one of us would be very happy if the Government snuck onto our property without our permission.

Ismael Ayala now argues that the government's invocation of the Fourth Amendment (1) invited the jurors to make decisions in the context of their own rights and privileges and not those of the defendants; (2) invited the jurors to decide the case on grounds other than the evidence and the law; and (3) attempted to shift the jurors' emphasis away from the evidence and toward emotion by "relating defense arguments to the jurors' own property interests."

To reverse a jury's verdict because of a prosecutor's improper remarks during closing arguments, the challenged remarks must (1) be improper and (2) prejudice a substantial right of the defendant. United States v. Bascaro, 742 F.2d 1335, 1353 (11th Cir. 1984). In this case, the prosecutor's remarks were not improper, because she was entitled to respond to issues raised by the defense's closing argument, see United States v. Alejandro, 118 F.3d 1518, 1524 (11th Cir. 1997), and her response was a legitimate one.

Ismael Ayala's third contention is that the district court committed plain error by giving the following jury instruction:

> While you are discussing the case do not hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But do not give up your honest beliefs solely because the others think differently or merely to get the case over with. Your only interest is to seek the truth from the evidence in the case.

Ismael Ayala now contends that the district court's "seek the truth" instruction clouded the jury's ability to follow the district court's instruction on reasonable doubt. He argues that "[c]learly, the standard of reasonable doubt is quite different from the very amorphous standard of seeking the truth."

Because Ayala did not object to the instruction at trial, our review is only for plain error. Williams, 445 F.3d at 1307. And there was none here. With the exception of the final sentence of it, we already have affirmed the constitutionality of this pattern jury instruction. See United States v. Brokemond, 959 F.2d 206, 209 (11th Cir. 1992). We are not persuaded that the supplemental instruction's admonition to "seek the truth" undermined the jury's understanding of the district court's instruction on reasonable doubt. Even if there were error, it is not plain.

Ayala's fourth and final contention is that the district court erred by enhancing his sentence based on his use of firearms in furtherance of the conspiracy and his leadership role in the conspiracy. According to Ismael Ayala,

12

those enhancements were improper because the facts upon which they were based were not found beyond a reasonable doubt by a jury. Therefore, Ismael argues that the district court engaged in the type of unconstitutional, post-verdict judicial factfinding prohibited under Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000), Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), and United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005). This contention is foreclosed by binding precedent. See United States v. Chau, 426 F.3d 1318, 1322–23 (11th Cir. 2005). Ismael Ayala's conviction and sentence are due to be affirmed.

## IV. ALEXIS AYALA

Unlike the other defendants in this appeal, Alexis Ayala pleaded guilty to conspiracy to distribute and possession with intent to distribute one kilogram or more of a mixture or substance containing heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(i) and § 846, and two counts of distribution of a mixture or substance containing heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C).

Alexis Ayala's first contention is that the district erred by sentencing based on its finding that his offense involved five or more kilograms of heroin. The district court arrived at that amount by considering the PSI and the evidence presented at the trial of his co-conspirators. He now argues that because he

13

pleaded guilty to conspiring to possess with intent to distribute "one or more" kilograms of heroin, the district court should have found that his offense involved between one and three kilograms of heroin, giving him a guidelines sentencing range of 121–151 months imprisonment. There is no merit in this argument. Nothing in Booker prohibits a district court from making additional factfindings based on a preponderance-of-the-evidence standard when that court is applying the sentencing guidelines in an advisory manner. See Chau, 426 F.3d at 1322–23.

Alexis Ayala's second contention is that the district court clearly erred by refusing to give him a two-level, minor-role sentence reduction pursuant to sentencing guidelines § 3B1.2(b). Application Note 5 to § 3B1.2 defines "minor participant" as a defendant who is less culpable than most other participants, but whose role cannot be accurately described as minimal. Application Note 3(C) explains that the decision to apply the minor participant reduction is "heavily dependant upon the facts of the particular case. As with any other factual issue, the court, in weighing the totality of the circumstances, is not required to find, based solely on the defendant's bare assertion, that such a role adjustment is warranted." "The proponent of the downward adjustment . . . always bears the burden of proving a mitigating role in the offense by a preponderance of the evidence . . . ." United States v. Rodriguez De Varon, 175 F.3d 930, 939 (11th

14

Cir. 1999). We review the district court's decision not to give a minor-participant reduction only for clear error. United States v. Ryan, 289 F.3d 1339, 1348 (11th Cir. 2002).

In determining whether a defendant qualifies for a minor-role reduction, the district court conducts a two-pronged analysis of the defendant's conduct. Id. Prong one requires the district court to assess whether a defendant's particular role was minor in relation to the relevant conduct attributed to him in calculating his base offense level. Id. If the defendant can establish that he played only a minor role in the conduct for which he has already been held accountable—not a minor role in any larger criminal conspiracy—a downward adjustment may be applied. Id. at 1348–49. If reached, prong two of the analysis requires the district court to consider the defendant's relative culpability as compared to that of other participants. Id. at 1349.

Alexis Ayala argues that his role in the overall conspiracy consisted of street-level transactions and occasional visits to the warehouse where the drugs were stored. He contrasts his participation with that of his co-conspirators who negotiated with drug suppliers, packaged the drugs for sale, supervised other co-conspirators, or financed the operation. He argues that he meets the criteria set forth to qualify for a minor-role reduction.

This argument is without merit. Simply because he was not the mastermind of the conspiracy does not mean that his role was minor. Applying the first prong of the two-pronged analysis, the district court found that Alexis Ayala's relevant conduct was participation in a conspiracy to possess with the intent to distribute between 18.4 and 28.4 kilograms of heroin. Although he was not the leader of the conspiracy (his cousin Ismael, who was the leader, was given a four-level increase for his role), Alexis Ayala concedes that he hung out at the warehouse where the drugs were distributed and sold some of the drugs in furtherance of the conspiracy. An uncontested factfinding in the PSI states that he participated in the conspiracy for three years. He introduced his cousin Ismael to a drug supplier and personally brought in at least one customer. Those facts establish that Alexis Ayala has failed to show clear error under the first prong of our two-pronged analysis.

Alexis Ayala's third contention is that the district court imposed an unreasonable sentence on him. Our "[r]eview for reasonableness is deferential," Williams, 456 F.3d at 1363, and is guided by the factors set forth in § 3553(a). Id. "[T]here is a range of reasonable sentences from which the district court may choose." Id. "We will not substitute our judgment in weighing the relevant factors because '[o]ur review is not de novo.'" Id.

16

Alexis Ayala argues that his 262–month sentence, although at the bottom of the recommended sentencing guidelines range, is unreasonable because it ignores his minimal role in the offense, his personal history of drug addiction and psychological problems, and physical abuse he suffered in the past. He also points out the hardship his incarceration will work on his family.

Instead of the 262–month sentence he received, he argues that a shorter sentence, in conjunction with substance abuse counseling and mental health treatment, would adequately deter him from committing future crimes and would address the nature of his role in the conspiracy. According to Alexis Ayala, the district court's failure to give a shorter sentence is unreasonable because it is longer than necessary to meet the purposes of sentencing as set forth in 18 U.S.C. § 3553(a).

Under our deferential standard of review, Alexis Ayala has not established that his sentence was unreasonable. The district court considered the § 3553(a) factors, rejected the argument that his role in the conspiracy was minor, and adopted the PSI's finding that Alexis Ayala had participated in the conspiracy for three years. His sentence was within the advisory guidelines range, and the sentencing guidelines are one of the factors that the district court must consider.

And finally, the sentence was well below the permissible statutory maximum of life imprisonment.  Accordingly, Alexis Ayala's sentence is due to be affirmed.

## V.

**AFFIRMED.**