**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>RANDY LEE SHILL,<br>*Defendant-Appellant*. | No. 13-30008<br><br>D.C. No.<br>3:10-cr-00493-BR-1<br><br>OPINION |

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted
December 3, 2013—Seattle, Washington

Filed January 24, 2014

Before: Richard C. Tallman and Carlos T. Bea, Circuit
Judges, and Stephen Joseph Murphy, III, District Judge.[*]

Opinion by Judge Tallman

---

[*] The Honorable Stephen Joseph Murphy, III, United States District
Judge for the Eastern District of Michigan, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed a conviction and sentence for online enticement of a female minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b), which federally criminalizes the attempted enticement of a minor to engage in "any sexual activity for which any person can be charged with a criminal offense."

The panel rejected the defendant's contentions (1) that § 2422(b) should be construed narrowly to preclude prosecution where the predicate "criminal offense" is a misdemeanor under state law, and (2) that the ten-year mandatory minimum sentence under § 2422(b) is cruel and unusual punishment in violation of the Eighth Amendment for the category of offenders who engage in attempted misdemeanor conduct under state law.

### COUNSEL

Kelly A. Zusman (argued), Appellate Chief, S. Amanda Marshall, United States Attorney, District of Oregon, Office of the United States Attorney, Portland, Oregon, for Plaintiff-Appellee.

Lisa Hay (argued), Assistant Federal Public Defender, Portland, Oregon, for Defendant-Appellant.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

TALLMAN, Circuit Judge:

Randy Shill appeals both his federal conviction following a conditional guilty plea and his ten-year mandatory minimum sentence for one count of online enticement of a female minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b).  On appeal, Shill contends that § 2422(b), which federally criminalizes the attempted enticement of a minor to engage in "any sexual activity for which any person can be charged with a criminal offense," should be construed narrowly to preclude prosecution where the predicate "criminal offense" is a misdemeanor under state law.  Shill also alleges that the ten-year mandatory minimum sentence under § 2422(b) is cruel and unusual punishment in violation of the Eighth Amendment for the category of offenders who engage in attempted misdemeanor conduct under state law.  We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reject both challenges to Shill's conviction and sentence.

I

A

In October 2010, Randy Shill, age 45, approached "JS," a 16-year-old high school student, at a school fundraising event.  Shill told JS that he had seen her recently at a local Target store and thought she "looked nice."  The next day, Shill sent JS a Facebook "friend" request via the Internet.  In the request, Shill wrote that JS looked "incredibly beautiful" at Target, and he requested that she not disclose their conversation to his two children, who attended the same high

school as JS.  JS told her father about the Facebook friend request, and he contacted the police.  Shortly thereafter, with the consent of JS and her father, an FBI agent took control of JS's Facebook account and established a Yahoo! e-mail account to instant message Shill.[1]  Shill engaged in a series of sexually explicit online chats with the agent in which he repeatedly attempted to entice the agent, whom he believed was JS, to have sex with him.

Shill arranged to meet the agent posing as JS at a Portland MAX Light Rail station at 4:00 p.m. on November 10, 2010, and he agreed to bring condoms and alcohol.  On November 10, 2010, Shill drove to the station and surveillance officers observed him wait as six trains came and left.  Shill was confronted and arrested as he returned to his car.  During a search of Shill's person incident to arrest, agents found condoms and the Samsung smart phone Shill had used to send sexually explicit photos and messages to the agent posing as JS.  In Shill's car, agents found flowers, alcohol, a bottle of Viagra, and additional condoms.

B

The government indicted Shill on one count of using the Internet to entice a minor to engage in sexual activity in

---

[1] JS was the third female to report Shill's suspicious behavior to local police.  In August 2009, a 16-year-old girl filed a police report, stating that Shill had sent sexually explicit text messages to her.  The girl's father declined to press charges since he did not want his daughter to testify at a trial.  In April 2010, another police report was filed by an 18-year-old Portland-area high school student whom Shill had met in a local park and had also attempted to contact through Facebook.

violation of 18 U.S.C. § 2422(b).**²** The indictment specified that Shill had knowingly attempted to coerce a minor to engage in sexual activity for which he could be charged with a criminal offense, namely, Sexual Abuse in the Third Degree, in violation of Oregon Revised Statute § 163.415,**³** and Contributing to the Sexual Delinquency of a Minor, in violation of Oregon Revised Statute § 163.435.**⁴** Both crimes are Class A misdemeanors under Oregon law. An attempt to commit either crime is also a misdemeanor under Oregon law. *See* Oregon Revised Statute § 161.405(1), (2)(e) (stating that "a person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime," and that

---

**²** The statute provides:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution *or any sexual activity for which any person can be charged with a criminal offense*, or *attempts* to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C § 2422(b) (emphasis added).

**³** Oregon Revised Statute § 163.415 reads, in pertinent part: "(1) A person commits the crime of sexual abuse in the third degree if: (a) The person subjects another person to sexual contact and: . . . (B) the victim is incapable of consent by reason of being under 18 years of age[.]"

**⁴** Oregon Revised Statute § 163.435 reads, in pertinent part: "(1) A person 18 years of age or older commits the crime of contributing to the sexual delinquency of a minor if: (a) Being a male, he engages in sexual intercourse with a female under 18 years of age[.]"

such an attempt constitutes a Class B misdemeanor under Oregon law).

Shill filed a motion to dismiss the indictment, which the district court denied in a written opinion and order. Shill ultimately pleaded guilty pursuant to the terms of a conditional plea agreement, which reserved his right to appeal the district court's denial of his motion to dismiss and to challenge § 2422(b)'s ten-year mandatory minimum on Eighth Amendment grounds.

At Shill's sentencing hearing, the district court found that Shill's sentencing guideline range was 70 to 87 months. The district court observed that a sentence of 70 months would be imposed if the court were not bound by the statutory mandatory minimum. Shill challenged the mandatory minimum sentence on Eighth Amendment grounds, and after careful consideration and briefing, the district court issued a written opinion rejecting Shill's Eighth Amendment challenge and imposing the ten-year mandatory minimum sentence.

II

A

Shill contends that the district court should have dismissed the indictment. Specifically, Shill challenges the following language in § 2422(b): "any sexual activity for which any person can be charged with a criminal offense[.]" According to Shill, this language is ambiguous, vague, inconsistent with Congress's expressed intent, and leads to the "absurd" result that misdemeanor conduct is punishable by a ten-year sentence under federal law. Shill argues that

§ 2422(b) should be construed narrowly to preclude prosecution where the attempted sexual activity is a misdemeanor as opposed to a felony.  We review the district court's denial of a motion to dismiss an indictment de novo, *United States v. Wiggan*, 700 F.3d 1204, 1210 (9th Cir. 2012), and we affirm.

B

The purpose of statutory interpretation "is to discern the intent of Congress in enacting a particular statute." *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999). "[A]nalysis must begin with the language of the statute itself; when the statute is clear, 'judicial inquiry into [its] meaning, in all but the most extraordinary circumstance, is finished.'" *United States v. Carter*, 421 F.3d 909, 911 (9th Cir. 2005) (quoting *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992)).  Unless otherwise defined, "words will be interpreted as taking their ordinary, contemporary, common meaning." *Id.* (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).  Here, our analysis begins and ends with the ordinary meaning of the statutory language.

The plain meaning of "criminal offense" is generally understood to encompass both misdemeanors and felonies. *Black's Law Dictionary* defines "criminal offense" under "offense" as "a violation of the law; a crime, often a minor one." *Black's Law Dictionary* (9th ed. 2009), *available at* Westlaw BLACKS.  The Supreme Court has used the phrase "criminal offense" broadly, stating in *Lawrence v. Texas* that while the offense at issue was a "class C misdemeanor" and a "minor offense in the Texas legal system," it was still "a *criminal offense* with all that imports" for the person charged. 539 U.S. 558, 575 (2003) (emphasis added).  As Shill notes,

the phrase is not defined in the federal criminal code. Nonetheless, we presume that Congress legislates in light of relevant case law and familiar legal definitions. *See Abuelhawa v. United States*, 556 U.S. 816, 821 (2009). Thus, Shill's actions, while a misdemeanor in the Oregon legal system, nonetheless constitute a "criminal offense" under § 2422(b). We decline to embrace Shill's narrow interpretation of the statute, which belies the plain meaning of the term "criminal offense."

There can be no doubt that Congress has frequently addressed the problem of sexual predators who utilize instrumentalities of interstate commerce to prey on minors. Each time Congress revisits the Mann Act, it toughens the penalties for violations of the crimes therein.[5] Further, Congress's repeated use of the word "any" suggests that Congress intended the statute's reach to be broad. *See, e.g.*, *United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning.").

---

[5] The development of § 2422(b) reflects congressional intent to impose increasingly harsh penalties on those who entice, or attempt to entice, minors to engage in unlawful sexual activity. Congress added § 2422(b) in the Telecommunications Act of 1996 to specifically prohibit the enticement of minors, and Congress imposed a maximum penalty of ten years. Pub. L. No. 104-104, 110 Stat. 56 (Feb. 8, 1996). Since 1996, Congress has increased the maximum sentence for violations of § 2422(b) three times. *See* Pub. L. No. 105–314, § 102, 112 Stat. 2974, 2975–76 (Oct. 30, 1998) (increasing the maximum penalty to 15 years); Pub. L. No. 108–21, 117 Stat. 650, 652–53 (Apr. 30, 2003) (increasing the maximum penalty to 30 years and adding a five-year mandatory minimum); Pub. L. No. 109–248, § 203, 120 Stat. 587, 613 (July 27, 2006) (increasing the maximum penalty to life in prison and increasing the mandatory minimum to ten years). These penalty increases "suggest[] a crystallizing vision on Congress's part of the need for stern punishment in this milieu." *United States v. Dwinells*, 508 F.3d 63, 69 (1st Cir. 2007).

Indeed, § 2422(b) imposes criminal liability on a person who knowingly uses "*any* facility" of interstate commerce to entice or "attempt" to entice "*any* individual who has not attained the age of 18 years" to engage in "*any* sexual activity for which *any* person can be charged with a criminal offense." 18 U.S.C. § 2422(b) (emphasis added). Without any basis in the text to limit the reach of § 2422(b) to predicate felony offenses, we refuse to read such a narrow limitation into the statute. *See Gonzales*, 520 U.S. at 5 (refusing to read a limitation into a federal statute where "[t]here is no basis in the text" to do so).

If Congress intended to limit § 2422(b) to apply only to felony conduct, it could have expressly said so, as Congress has done in other sections of the criminal code. *See, e.g.*, 18 U.S.C. § 922(g)(1), (9) (limiting application to those convicted of a felony or a misdemeanor crime of domestic violence); 18 U.S.C. § 924(e)(1) (providing enhanced penalties for "violent felony" offenders). Because Congress failed to limit § 2422(b) in this way, the logical inference is that Congress intended the statute to apply to both state felony and misdemeanor conduct.

Shill argues that the term "any sexual activity" must be read narrowly to exclude misdemeanor offenses. He points to the Seventh Circuit's opinion in *United States v. Taylor*, where the court interpreted the phrase "sexual activity" in § 2422(b) to require actual, attempted, or intended physical contact with the victim. 640 F.3d 255, 260 (7th Cir. 2011). According to the court, a broader reading of "sexual activity" could include such innocuous acts as "watching a pornographic movie, or a pole dancer, or a striptease artist," or even "flirting" or "flashing." *Id.* at 257–58. The court noted in dicta that "if the government's broad conception of

'sexual activity' were accepted, then by virtue of that misdemeanor law a flasher in the lobby of the federal courthouse in South Bend, if charged under 18 U.S.C. § 2422(b), would be courting a prison sentence of at least 10 years." *Id.* at 258. According to Shill, this statement gives credence to his argument that Congress could not have intended to criminalize mere misdemeanor activity. We are not so easily persuaded.

First, there is no question that, unlike the defendant in *Taylor*, Shill fully intended to engage in "sexual activity" involving physical contact with a minor. Shill's behavior is not innocuous in the least; it involves real harm to a particularly vulnerable class of individuals whom Congress intended to protect through its enactment of § 2422. Second, we conclude that the concerns of the Seventh Circuit in *Taylor* are mitigated when the phrase is read in the context of the statute as a whole. The phrase "any sexual activity" is modified by the statutory language immediately preceding and following it; § 2422(b) does not criminalize "flashing," for instance, when such behavior is not accompanied by the use of a means of interstate commerce. Again, without any basis in the text to limit § 2422(b) to felony conduct, we refuse to read the statute so narrowly.

Shill contends that we must avoid a literal interpretation of the statute that produces an "absurd" result. *See, e.g.*, *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543 (1940). According to Shill, if § 2422(b) is not interpreted narrowly, the "absurd" result is that a misdemeanor under state law would be punishable by a mandatory ten-year sentence under federal law. Shill cites to three Supreme Court cases to support his argument. Nonetheless, the cases cited by Shill—*Lewis v. United States*, 523 U.S. 155 (1998),

*Johnson v. United States*, 559 U.S. 133 (2010), and *Abuelhawa v. United States*, 556 U.S. 816 (2009)—each turn on an interpretation of the particular statute as derived from the plain meaning of the terms and their context in the statutory scheme. Because we have engaged in a similar analysis of a different statute, those cases do not compel a different result.

For instance, in *Lewis v. United States* the Supreme Court concluded that the phrase "any enactment of Congress" in the Assimilated Crimes Act (ACA)[6] could not be intended to carry its literal meaning. 523 U.S. at 162. Under a literal interpretation, the phrase would prevent assimilation of a state statute if the defendant's act or omission would be punishable by *any* federal enactment. *Id.* at 159. Under this narrow interpretation, a state could not enact a law criminalizing murder because the federal government already criminalizes second degree murder in 18 U.S.C. § 1111. *Id.* at 160–61. After analyzing the purpose and context of the ACA, the Supreme Court concluded that applying the plain meaning of the phrase would "dramatically separate the statute from its intended purpose." *Id.* at 160. Here, no similar problem exists. Analysis of the purpose and context of § 2422(b) leads to the opposite conclusion—Congress's repeated use of the word "any," combined with the expansive

---

[6] The purpose of the ACA is to borrow state law to fill in gaps in federal criminal law within the special maritime and territorial jurisdiction of the United States where Congress has not defined the missing offenses. *See Lewis*, 523 U.S. at 161. Thus, the ACA "applies state law to a defendant's acts or omissions that are 'not made punishable by *any enactment* of Congress.'" *Id.* at 159 (quoting 18 U.S.C. § 13(a)).

list of unlawful acts listed in the statute (persuade, induce, entice, coerce) strongly suggests that Congress intended the statute to carry its literal meaning.

Next, in *Johnson v. United States*, the Supreme Court refused to apply a broad definition of "physical force" when defining the phrase "violent felony" under the Armed Career Criminal Act because the result was a "comical misfit" in which a "violent felony" might include a battery of the "merest touching." 559 U.S. at 141, 145. Shill contends that we should construe § 2422(b) similarly, excluding misdemeanor conduct to avoid a "comical misfit." But Shill fails to recognize that the Supreme Court's decision to reject the misdemeanor definition of battery in *Johnson* was based on the statute's express use of the modifier "violent." *Id.* at 141–42. No comparable modifier exists in § 2422(b).

Finally, in *Abuelhawa v. United States*, the statute at issue, 21 U.S.C. § 843(b), penalized using a cell phone to "facilitate" the commission of a felony drug offense. 556 U.S. at 818. The Supreme Court held that an individual does not violate § 843(b) by using a cell phone to make a misdemeanor drug purchase, even though his call to the dealer could be said to facilitate the felony of drug distribution. *Id.* In reaching this conclusion, the Court relied on several factors, including the common usage of "facilitate" and its legal definition, case-law analogies to "aiding and abetting" concepts, the statutory context of lesser punishment for buyers and greater punishment for sellers, and a comparison of the length of punishment if a misdemeanor purchase was transformed into felony facilitation. *Id.* at 820–23 ("Given the [Controlled Substances Act's] distinction between simple possession and distribution, and the background history of these offenses, it is impossible to

believe that Congress intended 'facilitating' to cause that twelve-fold quantum leap in punishment for simple drug possessors."). Shill focuses solely on the final factor, noting the harshness of the ten-year mandatory minimum sentence. However, the statute in *Abuelhawa* was not interpreted narrowly solely to avoid a harsh sentence. Each factor the Court considered derives from the plain meaning of the word "facilitate" and its use in the statutory scheme. Because we conclude that the plain meaning of the term "criminal offense" cannot be read to exclude misdemeanor conduct from the statute's ambit, *Abuelhawa* does not compel the conclusion Shill urges upon us.

Congress wrote § 2422(b) to address the very real and dangerous problem of the online enticement of minors. There is no basis in the text to exclude attempted misdemeanor conduct from the statute's reach; indeed, the plain language of § 2422(b) compels the opposite conclusion. We hold that § 2422(b) clearly and unambiguously criminalizes attempted sexual activity where the object of the attempt would amount to either a misdemeanor or a felony under state law.

C

Alternatively, Shill suggests that we should apply the rule of lenity or the doctrine of constitutional avoidance because the statute is grievously ambiguous. Further, Shill asserts that the statute is unconstitutionally vague. We find these contentions unpersuasive in light of our conclusion that the language Congress chose means what it says.

The rule of lenity "requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Nader*, 542 F.3d 713, 721 (9th Cir. 2008)

(internal quotations omitted). The rule applies "only where after seizing every thing from which aid can be derived," the court is left with a "grievously ambiguous" statute. *Id.* (quotations omitted). Because the rule of lenity applies only where the meaning of a statute is genuinely uncertain, and because we conclude that § 2422(b) is not ambiguous, the rule is not applicable here. *See also Dwinells*, 508 F.3d at 70.

Shill's argument under the doctrine of constitutional avoidance is no more persuasive. Under this canon, a "statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score." *Almendarez-Torres v. United States*, 523 U.S. 224, 237 (1998) (internal quotations omitted). The doctrine is only applicable where a statute is "genuinely susceptible to two constructions after, and not before, its complexities are unraveled." *Id.* at 238. Because the statutory language of § 2422(b) is not ambiguous, the doctrine of constitutional avoidance is inapplicable as well.

Finally, we hold that § 2422(b) is not void for vagueness. A statute is void for vagueness if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes. *See United States v. Dhingra*, 371 F.3d 557, 561 (9th Cir. 2004). Shill's reading of § 2422(b), by eliminating all misdemeanors from the term "criminal offense," "defies the ordinary understanding of the statutory language and introduces vagueness where there is none." *Id.* The plain language of § 2422(b) criminalizes "any sexual activity" which could constitute a "criminal offense." A person of ordinary intelligence would have no doubt that criminal liability under the statute does not depend on

whether the conduct constitutes a misdemeanor or a felony under state law.

## III

Shill next argues that the ten-year mandatory minimum sentence under § 2422(b) violates the Eighth Amendment's prohibition against "cruel and unusual punishment" for the category of offenders charged with violating § 2422(b) based solely on misdemeanor predicates. We review de novo whether a sentence violates the Eighth Amendment. *United States v. Fernandez*, 388 F.3d 1199, 1258 (9th Cir. 2004).

The Eighth Amendment provides that "[e]xcessive bail shall not be required . . . nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. While "strict proportionality between crime and sentence" is not required, a punishment will be deemed "cruel and unusual" when it is "grossly disproportionate to the crime." *Graham v. Florida*, 560 U.S. 48, 60 (2010). As we have recognized, there are two ways to succeed on a proportionality claim. *See United States v. Williams*, 636 F.3d 1229, 1232 (9th Cir. 2011). An appellant can challenge the length of a term-of-years sentence "given all the circumstances in a particular case" (the as-applied challenge). *Graham*, 560 U.S. at 59. Alternatively, an appellant can show that an entire class of sentences is unconstitutionally disproportionate given the "nature of the offense" or the "characteristics of the offender" (the categorical challenge). *Id.* at 60. On appeal, Shill pursues only a categorical challenge.

When considering an appellant's categorical challenge to a sentence, "a threshold comparison between the severity of the penalty and the gravity of the crime does not advance the

analysis." *Id.* at 61. Instead, when identifying the types of crimes or types of offenders for which a sentence is categorically disproportionate, we must first consider "objective indicia of society's standards, as expressed in legislative enactments and state practice to determine whether there is a national consensus against the sentencing practice at issue." *Id.* (internal quotations omitted). Then, "guided by the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose," we must determine in the exercise of our own independent judgment whether the punishment violates the Constitution. *Id.* (internal quotations omitted).

Until *Graham v. Florida*, the categorical approach was used solely with respect to categorical restrictions on the death penalty. *Id.* at 60–61. For instance, the Supreme Court has applied the categorical approach to prohibit capital punishment for defendants who committed a non-homicide crime against an individual. *See Kennedy v. Louisiana*, 554 U.S. 407, 413 (2008). Likewise, the Supreme Court has prohibited capital punishment for juvenile defendants, *see Roper v. Simmons*, 543 U.S. 551, 578 (2005), and for those whose intellectual functioning is in a low range, *see Atkins v. Virginia*, 536 U.S. 304, 321 (2002).

In *Graham*, the Supreme Court applied the categorical analysis for the first time to a non-capital sentence when it concluded that the Eighth Amendment prohibits a sentence of life imprisonment without parole for juvenile offenders convicted of non-homicide crimes. *Graham*, 560 U.S. at 75, 82. Shortly thereafter, in *Miller v. Alabama*, the Court pronounced another categorical rule, barring mandatory life imprisonment without parole for juvenile offenders convicted

of homicide crimes. — U.S. —, 132 S. Ct. 2455 (2012). Shill invites us to apply the categorical approach to the ten-year mandatory minimum sentence at issue here. We decline to do so.

Both *Graham* and *Miller* expressly turned on two factors not present here: a juvenile offender and a sentence of life in prison without parole. In extending the categorical approach to apply outside the death penalty, both *Miller* and *Graham* focused on the "diminished culpability" and "greater prospects for reform" of juvenile offenders, and concluded that juveniles "are less deserving of the most severe punishments." *Miller*, 132 S. Ct. at 2464–65; *Graham*, 560 U.S. at 68–69. *Miller* and *Graham* stressed that "the characteristics of youth, and the way they weaken rationales for punishment, can render a life-without-parole sentence disproportionate." *Miller*, 132 S. Ct. at 2465–66.

*Miller* further clarified the kinship between a death sentence and life without parole, stating that the categorical ban in *Graham* was justified for a sentence of life imprisonment without parole "[i]n part because we viewed this ultimate penalty for juveniles as akin to the death penalty[.]" *Miller*, 132 S. Ct. at 2466. Life without parole sentences, according to the Court, "share some characteristics with death sentences that are shared by no other sentences." *Graham*, 560 U.S. at 69. For these reasons, the Supreme Court announced new categorical rules in *Graham* and *Miller* "in a way unprecedented for a term of imprisonment." *Miller*, 132 S. Ct. at 2466.

Neither *Graham* nor *Miller* suggest that a ten-year mandatory prison term is the type of sentencing practice that requires categorical rules to ensure constitutional

proportionality. Shill is not a juvenile, and his ten-year mandatory minimum sentence is in no way akin to the death penalty. Thus, we refuse to apply the categorical approach to Shill's ten-year mandatory minimum sentence.

**AFFIRMED.**