**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 15-1010

———————

UNITED STATES OF AMERICA

v.

EDWARD LEONARD FINLEY HILTS,
Appellant

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 2-11-cr-00133-001)
District Judge:  Honorable Donetta W. Ambrose

———————

Argued:  October 8, 2015

———————

Before: FUENTES, SMITH and BARRY, *Circuit Judges*

(Opinion Filed:  December 3, 2015)

———————

Renee Pietropaolo, Esq. (*Argued*)
Office of Federal Public Defender
1001 Liberty Avenue
1500 Liberty Center
Pittsburgh, PA  15222

*Counsel for Appellant*

Jane M. Dattilo, Esq. (*Argued*)
Rebecca R. Haywood, Esq.
Office of the United States Attorney
700 Grant Street

Suite 4000
Pittsburgh, PA 15219

*Counsel for Appellee*

———————

OPINION[*]

———————

BARRY, *Circuit Judge*

Edward Leonard Finley Hilts appeals from the judgment of sentence of 324 months' imprisonment imposed on him after he was convicted following trial on charges of attempting to persuade, induce, entice, or coerce a minor to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b); traveling in interstate commerce to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2423(b); and transporting and possessing child pornography, in violation of 18 U.S.C. §§ 2252(a)(1) and (a)(4).[1] We will affirm.

## I. BACKGROUND

Given that we write primarily for the parties and the District Court, we need not reprise in great detail the background of this case, but more than a limited recitation is appropriate given the seriousness of the charges and the length of the sentence imposed.

———————

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Because Hilts was convicted after a jury trial, we must "defer to the jury's verdict and view the evidence in the light most favorable to the government." *United States v. Kolodesh*, 787 F.3d 224, 229 n.1 (3d Cir. 2015). The facts recounted here are viewed in that light.

2

In February 2009, Hilts, a sixty-three-year-old Californian, contacted Ashley Anthony, a fourteen-year-old Pennsylvanian, on a social networking site called "MyYearbook" and began an eight month-long online relationship with her. Ashley Anthony was a fictitious person, whose account was created by Detective Lynn Havelka of the Pittsburgh Police. Her MyYearbook profile indicated that she was a nineteen-year-old high schooler, but after she and Hilts became "friends" on the site, she revealed that she was only fourteen. (A167–70.)

Hilts's initial online chats with Ashley were both flirtatious and fatherly. She was "so cute" and he could help her make decisions about her future. (A170–72.) He also told her that he was forty three, divorced, and wealthy – none of which was true. Increasingly, however, his flirtations became sexual. For example, after asking her what she was wearing, he told her that her pajamas sounded "tasty," (A174–75), and told her that seeing her in a bathing suit would give him an erection and that he would have "a hard time trying to keep my hands off you." (A176–77.) He also told her that he had broken up with his twenty-seven-year-old girlfriend, Heather, and asked Ashley to be his girlfriend. By August, Hilts regularly described, in lurid detail, various sexual acts he wanted to perform on Ashley, including oral and vaginal sex and digital penetration.

Hilts repeatedly expressed his awareness that their relationship was illicit. He told Ashley that they would have to "play dad and daughter" in public, (A203), and that when they meet she should "have [her] best hi, Daddy, kind of kiss ready." (A233.) He recognized that "[i]n their language I'm grooming you." (A225.) He also claimed that

3

he was doing "homework" by talking to other young girls with older boyfriends, (A203–04), and performing legal research, concluding that he "can't insert anything into your body," (A199–200). He confessed that he had "a touch of fear" that he would be arrested on arrival if he visited her in Pittsburgh. (A231–32.)

Nonetheless, Hilts made plans to visit Ashley in early October. He promised to give her hickeys "in all the right places," (A235), which he testified at trial meant "below the collar line." (A376.) He bought green "new boxers" for the trip and sent Ashley a picture of himself wearing them. (A211, 217, 489.) He encouraged her to skip school during his visit, asked her whether her mother would attempt to verify her lies about attending sleepovers at friend's places, and told her that she was "not only a lover, but a student that I can teach things to." (A211.) His last message told her that he was "[g]oing to get luggage, then car. I wore the green ones. So excited." (A237.)

Hilts was arrested in the baggage claim area of the Pittsburgh airport on October 1, 2009. FBI Special Agent Gregg Frankenhouser searched Hilts's computer bag and suitcase and found two unopened boxes of condoms and a bottle of Viagra packed in with Hilts's toiletries. Hilts was indeed wearing green boxers. Frankenhouser also interviewed Hilts. Hilts admitted that he was traveling from California to meet Ashley and that he believed she was fourteen years old. He stated that he intended to hug and kiss her, and do "some naked touching," but had to wait until she was older to have sex. (A250.) The condoms, he said, were purchased in June for sex with his then-girlfriend, Heather.

4

The FBI took custody of Hilts's phone and computer. Both contained sexually explicit images of minors, including files with names starting with "loli-," "13 YO," and "14 YO." (A281, 290.) Hilts subscribed to at least five newsgroups for people with sexual interest in children: alt.binaries.pictures. erotica.Sarah.young; alt.sex.pre-amateurs; alt.sex.young; alt.sex.incest.alt-sex.young; and alt.sex.teens. His email account included folders "NEWPIX" and "TOBEFILED," which included images titled "14 Y-O Real Teenagers" and "Daughters 9 to 15 Y-O." (A281.)

After Hilts was charged and released on bond, he fled, ultimately to Vancouver, where he was arrested in a hotel room with a sixteen-year-old girl named Natasha. By that time, May 2011, Hilts had been engaging Natasha in sexual conversations online for two years and had previously expressed sexual interest in Natasha's ten-year-old sister, Hannah.

The jury also heard evidence of Hilts's online chat with "mikeandmisty_atl," purportedly a husband and wife who enjoyed sex with young girls. One month before his arrest, Hilts stated on the chat that he had had sex with minors in Thailand, including a thirteen-year old named Dek over many months. He described Dek as his "gf," and, referring to Ashley, said his "current gf is 14." (SA15.) He said that Ashley was "straight" and that he had not "started to work with her yet. First meeting soon." (A307–08.) He also said that he had "another one in Vancouver that is 14," referring to Natasha, and that he was "[g]oing to see her soon too." (A307–08.)

Hilts testified on his own behalf, attempting to persuade the jury that he lacked the

5

requisite mental state for the charged crimes. He saw in Ashley a potential "new mate" with whom to have children and live out his life. His wife of thirty years would be "release[d]" from their sexless marriage and free to "see the people she was wanting to see." (A335.) His Pittsburgh visit was meant to evaluate his romantic chemistry with Ashley and her willingness to accept his age. He admitted that he had lied to Ashley about his age because he had created his profile "for research purposes" and then was unable to change it, (A350.); that he did not intend to engage in sexual activity with her beyond hugging, kissing, and giving her hickeys; and excused their graphic, sexual chats as "sublimation" to "partially help[] to make sure that somebody who's in their hormonal prime, if you will, has some way to take care of the pressure they're feeling." (A354–56.) He denied telling Frankenhouser that he intended to engage in naked touching with Ashley, and pointed to repeated references in his chats with Ashley that they would have to be patient and wait until she was older before having sex. Showing Ashley his green boxers was "[j]ust a lover to lover joke." (A375–76.)

As for the condoms, he testified that he accidentally brought them to Pittsburgh and was confused when he told the FBI, in a post-arrest interview, that he bought the condoms in June (prior to the manufacturer's actual ship date) and that he actually purchased them in August for a sexual encounter with a woman named Shelby Hedgecock. He offered no other evidence of Hedgecock's existence, and told another woman in August that he had not had sex for five weeks. As for the Viagra, it was supposedly in his bag because, after using it once in June and suffering a migraine, he

6

had the bottle there to return to the doctor to give to someone else.

Regarding his chat with mikeandmisty_atl, Hilts testified that he found them to be "disgusting." (A338.) He said he was conducting research and was being "empathetic" and "nonjudgmental" based on his "training as a psychologist." (*Id.*) He fled the country, not to avoid prison, but to ensure that his social security benefits continued to his wife, and that his relationship with Natasha was research to help Ashley navigate their age differences. He invited Natasha to his Vancouver hotel room, he said, to "help her solve her issues" and act as a "father figure." (A398.)

As to the child pornography counts, Hilts stipulated that the laptop possessed at the time of his arrest contained visual depictions of actual minors engaged in sexually explicit conduct and that the fact that the visual depictions were of actual minors is readily apparent from viewing them. His testimony, however, implied that he lacked knowledge that the images were child pornography—he was doing marketing work for a company that produced adult pornography and had joined the newsgroups to spam potential customers who were interested in younger performers—the work was "boring and not much fun" and, he "[g]enerally [did] not" look at the collections that he was downloading. (A328.)

Hilts was convicted and subsequently sentenced to 324 months' imprisonment on the travel and enticement counts and 240 months' concurrent imprisonment on the child pornography counts. In addition to the evidence admitted at trial, the District Court considered at sentencing the written statement of and notes from Frankenhouser's

telephone interview of Hilts's adult niece, S.W., who claimed that Hilts began to sexually abuse her when she was nine years old. Hilts timely appealed.[2]

## II. ANALYSIS

**A.** **Whether the District Court Erred in Instructing the Jury that the Pennsylvania Crime of Indecent Assault Constituted Unlawful "Sexual Activity" Under 18 U.S.C. § 2422(b)**

Count One of the Indictment charged Hilts with attempting to "knowingly persuade[], induce[], entice[], or coerce[] any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2422(b). The District Court instructed the jury that, under Pennsylvania law, 18 Pa.C.S. § 3125(a)(8), it is unlawful for a person to engage in either sexual intercourse or indecent contact with another person under the age of 16 and defined indecent contact as "any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire in either person." (8 Pa.C.S. § 3101.) Hilts contends that the Court's instruction that indecent contact could constitute unlawful "sexual activity" under § 2422(b) was in error. Hilts preserved his

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291. Jury instructions are ordinarily reviewed for abuse of discretion, but review is plenary "when the question is whether a district court's instructions misstated the law." *United States v. Dobson*, 419 F.3d 231, 236 (3d Cir. 2005). The admission of evidence under Federal Rule of Evidence 404(b) is reviewed for abuse of discretion, *United States v. Caldwell*, 760 F.3d 267, 274 (3d Cir. 2014), unless the argument was not preserved before the District Court, in which case it is reviewed for plain error. *United States v. Rivas*, 493 F.3d 131, 136 (3d Cir. 2007). The denial of a motion for severance is reviewed for abuse of discretion. *United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005). Unpreserved claims of sentencing miscalculation are reviewed for plain error. *United States v. Fountain*, 792 F.3d 310, 318 (3d Cir. 2015).

objection to the instruction, and so our review is plenary.

Because the federal criminal code does not define "sexual activity,"[3] Hilts argues that "sexual activity" should follow the definition of "sexual act" in 18 U.S.C. § 2246, in which "sexual act" is defined as "the intentional touching, not through the clothing, of the genitalia" of a person under 16. § 2246(2)(D). This narrow definition would exclude indecent contact, which carries a broader definition under Pennsylvania law, and which Pennsylvania courts have held includes touching through the clothing and touching of non-genitalia, such as a minor's face, neck, stomach, or backside of the legs. *See Commonwealth v. Fisher*, 47 A.3d 155, 157–58 (Pa. Super. Ct. 2012); *Commonwealth v. Capo*, 727 A.2d 1126, 1127–28 (Pa. Super. Ct. 1999); *Commonwealth v. Ricco*, 650 A.2d 1084 (Pa. Super. Ct. 1994).

Whether § 2246's definition of "sexual act" also applies to "sexual activity" in § 2422(b) has split certain of our sister circuits. Hilts relies on the Seventh Circuit's decision in *United States v. Taylor*, 640 F.3d 255 (7th Cir. 2011) (Posner, J.), to argue that the two terms are synonymous.[4] The Fourth and Ninth Circuits, on the other hand, have rejected the Seventh Circuit's reasoning, and read "sexual activity" to target a

---

[3] The code does provide a partial definition of "sexual activity" in § 2427, which states that the term "includes the production of child pornography."

[4] Hilts also cites a Sixth Circuit decision, *United States v. Lee*, as treating "sexual activity" in § 2422(b) as synonymous with "sexual act." 502 F.3d 447 (6th Cir. 2007). Hilts' argument rests principally on the court's use of the term "sexual act" to describe Lee's conviction of § 2422(b). But that court was not presented with the question presented here; instead, Lee challenged a condition of his supervised release. While the court's language minimally supports Hilts's argument that the two terms are colloquially equivalent, it did not seriously address the question before us.

broader range of behavior than "sexual act." *See United States v. Shill*, 740 F.3d 1347

(9th Cir.) (Tallman, J.), *cert. denied*, 135 S. Ct. 147 (2014); *United States v. Fugit*, 703

F.3d 248, 254 (4th Cir. 2012) (Wilkinson, J.), *cert. denied*, 134 S. Ct. 999, *reh'g denied*,

134 S. Ct. 1576 (2014).[5]

Tempting as it may be to weigh in on the circuit split, we see no need to do so

because, as the government argues, even if Hilts is correct that the Seventh Circuit

accurately defined "sexual activity" (to do so might give us some pause), and that, under

that definition, the District Court erred in instructing the jury that indecent contact

contacted a violation of the federal enticement statute, such error was harmless. Hilts,

not surprisingly, disagrees, and argues that the government bears a "decidedly heavy"

burden of proving beyond a reasonable doubt that the error did not contribute to the

verdict. *United States v. Waller*, 654 F.3d 430, 434, 439 (3d Cir. 2011) (explaining that

the question of harmless error "is not whether, in a trial that occurred without the error, a

guilty verdict would surely have been rendered, but whether the guilty verdict actually

rendered in this trial was surely unattributable to the error").

Hilts is correct that the District Court instructed the jury that indecent contact,

which includes "touching of . . . other intimate parts of [a] person," constitutes sexual

---

[5] The Eleventh Circuit was also recently presented with the question of whether § 2246's definition of "sexual act" defines "sexual activity" under § 2422(b), but declined to do so. *United States v. Paulsen*, 591 F. App'x 910, 913 (11th Cir. 2015). The court found that the defendant's alleged error was harmless because the evidence "overwhelmingly" reflected that the defendant had attempted to persuade a minor to engage in activity clearly within the definition of "sexual act" under § 2246. *Id.* at 913–14.

activity in violation of the federal enticement statute. And he is further correct that the government relied on this instruction to urge the jury to find that Hilts's testimony that he intended "to give Ashley Anthony hickeys in all the right places," including "inside her shirt below the neck line," constituted indecent contact under Pennsylvania law. (A450–51.) Indeed, the government told the jury that "there is no hugs and kisses defense." (A138–40.)

But, the verdict on Count Two, as well as the trial evidence as a whole, strongly support the conclusion that the jury discredited Hilts's testimony and concluded instead that he planned to engage with Ashley in sexual acts, as defined in § 2246. Under Count Two, barely contested before us, Hilts was convicted of traveling with the intent to engage in "illicit sexual conduct" under 18 U.S.C. § 2423(b), which is expressly defined to include the narrower definition of "sexual act" that Hilts advocates also applies to § 2422(b). § 2423(f). It is highly unlikely that the jury concluded that Hilts intended to engage in a sexual act with Ashley but was knowingly enticing her to engage only in indecent contact.

Hilts argues that because the government mixed up the words "sexual act" and "sexual activity" when referring to the enticement and travel counts in closing, the jury could have mistakenly found him guilty under Counts One and Two based only on his intent to give Ashley hickeys. But the District Court properly instructed the jury on the elements of the travel count, including the definition of "sexual act," and we simply cannot conclude that the jury misunderstood its task. The far more likely conclusion is

11

that the jury did not believe Hilts' testimony that he intended to refrain from sex with Ashley, a conclusion further supported by Hilts' graphic sexual chats with Ashley and his assurances that "you will love it and you will be fine," (A199), and "[w]hen it's truly making love, it is so great, it feels so good and can last as a glow for days," (A358), as well as the condoms, Viagra, and his questioning of Ashley about skipping school and lying to her mother about sleepovers.

**B.      Whether the District Court's Rule 404(b) Rulings were in Error**

Hilts challenges the District Court's admission under Federal Rule of Evidence 404(b) of three pieces of the evidence we have noted above: his membership in online newsgroups reflecting a sexual interest in children; online chat conversations with mikeandmisty_atl in which he claimed to have had sex with underage girls, including a thirteen-year-old Dek in Thailand; and an online conversation with fourteen-year-old Natasha in which he expressed interest in Natasha's ten-year-old sister performing oral sex on him.[6] Hilts initially contended that none of this was admitted for a valid purpose under Rule 404(b) (he conceded at oral argument before us that the mike and misty chat was direct evidence of intent), and that all three were so unfairly prejudicial as to outweigh their probative value in violation of Rule 403. The government disagrees and further contends that if any error did occur, it was harmless.

---

[6] Hilts also states that the government introduced under Rule 404(b) his flight to Canada as evincing consciousness of guilt. It does not seem, however, that Hilts has pursued this before us.  Mere passing reference to an issue without argument or supporting citations waives the issue before this Court. *United States v. Stock*, 728 F.3d 287, 290 n.3 (3d Cir. 2013).

We conclude that the District Court did not abuse its discretion in admitting the online chat conversations with mike and misty_atl, and that, even if error was committed as to one or both of the remaining pieces proffered under Rule 404(b), an issue we need not reach, that error was harmless. We will return to this albeit briefly, *infra*.

We begin, however, with an observation. We have written powerfully, and very specifically, particularly recently, as to what we require of the proponent of Rule 404(b) material to show, and how carefully a district court must consider what is presented to it. *See*, *e.g.*, *United States v. Caldwell*, 760 F.3d 267 (3d Cir. 2014); *United States v. Davis*, 726 F.3d 434 (3d Cir. 2013); *United States v. Green*, 617 F.3d 233 (3d Cir. 2010). Indeed, we have been extraordinarily explicit as to what must be done to put meat on Rule 404(b)'s barebones, emphasizing, in effect, that it is not knee-jerk "stuff," nor is the Rule 403 balancing. We sense that insufficient attention is still being paid to what we have said, or to the ramifications of not paying sufficient attention (*see*, *e.g.*, *Caldwell*— vacate and remand; *Davis*—vacate and remand). Indeed, had *Caldwell* issued after the verdict in this case rather than a month before, we may well have felt compelled to say more than a few words about one or both of the two pieces of proffered evidence we choose not to reach.

It would serve no useful purpose in this Not Precedential Opinion to recite those requirements, and go through what the government and the District Court did or did not do as to each of the three proffered pieces of Rule 404(b) evidence. Rather, as to the one piece of evidence we choose to reach, mikeandmisty_atl, suffice it to say that the Court

reserved ruling on that until trial, declining to do so before hearing Hilts' testimony and better understanding the chats' probative value.  It ultimately found the mikeandmisty_atl chat admissible under Rule 403 given Hilts's defense that his motive and intent in visiting Ashley were to evaluate their chemistry as potential partners and to engage in no more explicit sexual conduct than hugs, kisses, and hickeys.

Hilts argues, however, that his admissions in mikeandmisty_atl about ongoing sexual abuse of Dek in Thailand were of limited probative value because the abuse occurred over 40 years ago when Hilts was stationed in Thailand, and cites cases in support of his argument that temporal remoteness depreciates probative value. *See United States v. Wallace*, 759 F.3d 486 (5th Cir. 2014); *United States v. Clay*, 667 F.3d 689 (6th Cir. 2012). He also argues that the chats were fantasy and, therefore, also of limited probative value. The Supreme Court rejected this argument in *Huddleston v. United States*, holding that Rule 404(b) does not require a preliminary finding by the court that the proffered other act actually occurred. 485 U.S. 681, 686–87 (1988).  Beyond even that, these arguments undermine Hilts' broader claim. His online boasts may be of questionable veracity in proving that he had sex with a thirteen-year old in Thailand 40 years ago, but, whether fantasy or truthful retellings, they persuasively exhibit his present sexual desire for underage girls.

As for prejudicial impact, Hilts emphasizes the revolting content of the disputed evidence, but has to engage in contortions to be able to even suggest that the disputed evidence is more prejudicial than the direct evidence of his lurid sexual chats with

14

Ashley, contending, for example, that his boasts of sex with Dek are more inflammatory because he claimed to have had actual sex with a thirteen-year old rather than mere chats with an adult woman posing as a minor.

The government's arguments were, and are, persuasive. The probative value of other-acts evidence is heightened when the issue for which it is admitted "involves the actor's state of mind." *Huddleston*, 485 U.S. at 685. Its value is further magnified when it counters a defense strategy, as here. *See United States v. Sriyuth,* 98 F.3d 739, 748 (3d Cir. 1996). Additionally, the risk of unfair prejudice from inflammatory evidence is diminished by the presence of other evidence that is similarly shocking. And, constraining the risk of prejudice, the District Court issued two limiting instructions regarding the other-acts evidence, once before the evidence was admitted to the jury and once before charging the jury.

As to the two remaining pieces of Rule 404(b) evidence, even if some error there be as to one or both of them, that error was harmless—or, in the case of the Natasha conversation, did not affect Hilts's "substantial rights." *United States v. Wolfe*, 245 F.3d 257, 261 (3d Cir. 2001). The government bears the burden to show that an error was harmless by showing that "it is 'highly probable that the error did not contribute to the judgment.' This '[h]igh probability' requires that the court possess a 'sure conviction that the error did not prejudice the defendant.' " *United States v. Caldwell*, 760 F.3d at 285 (quoting *United States v. Cunningham*, 694 F.3d 372, 391-92 (3d Cir.2012)). "Under plain error review, the defendant bears the burden of establishing that the error prejudiced

15

the jury's verdict." *United States v. Wolfe*, 245 F.3d 257, 261 (3d Cir. 2001).

Hilts argues that that evidence could not be harmless because the other evidence of his mental state was insufficient. Essentially, Hilts repeats his defense testimony—for example, that he intended to refrain from sex with Ashley until she was of age, that the condoms and Viagra were in his bag for other reasons, and that he downloaded the child pornography unwittingly as part of research for a legal porn company. But Hilts's explanations were not only contorted but contradicted, and substantially outweighed by his graphic and near-daily sexual chats with Ashley in the months preceding his travel and his assurances to her that she would love having sex.

### III. CONCLUSION[7]

We will affirm the judgment of sentence.

---

[7] We have carefully considered Hilts's claims that the District Court (1) abused its discretion in denying his motion to sever the child pornography charges from the enticement and travel charges, and (2) plainly erred by not grouping those same counts. We reject both claims without further discussion.